DOROTHEA PUDRITZKY v. THE SUPREME LODGE KNIGHTS OF HONOR.

*Life insurance — Representations in application — Agent writing answers to questions upon his own knowledge — Evidence.*

1. A mere temporary ailment or indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render a policy or certificate of insurance void. *Brown v. Insurance Co.*, 65 Mich. 306.

2. Where the medical examiner of an insurance company, acting as its agent, assumes to write out answers to questions upon his own knowledge of the facts, rather than from the answers of the applicant, the company is not in a position to claim that such answers were untrue.

3. The indorsement of a medical examiner upon an application for insurance is not competent evidence to prove the *fact* of the rejection of such application.

Error to Wayne. (Brevoort, J.) Argued June 26, 1889. Decided October 11, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*William Look* and *H. F. Chipman* (*E. F. Conely*, of counsel), for appellant.

*Dickinson, Thurber & Stevenson*, for defendant.

LONG, J.    Defendant is a corporation organized under the laws of Missouri.    The action is brought to recover upon a certificate of membership issued by the defendant, upon the application of the husband of the plaintiff, in the sum of $2,000; the plaintiff being named as beneficiary.

The defense in the court below was that this certificate was void by reason of the false statements made by the husband in his application for membership.

The particular matters relied upon in the defense, and which the court below held defeated the recovery of the plaintiff, were that in the application of Mr. Pudritzky he represented and stated, in answer to questions propounded,—

1. That he had never been afflicted with the disease of asthma or blood-spitting.

2. That he had never made application for life insurance, and had never been rejected by the medical examiner of any lodge or society;—

And that these statements were untrue.

Attached to this examination was the following certificate, signed by the applicant:

" I certify that the answers made by me to the questions propounded by the medical examiner of Cherusker Lodge No. 1,267, which are attached to this application and form a part hereof, are true, in which there are no misrepresentations, or suppression of known facts; and I acknowledge and agree that the above statement shall form the basis of the agreement with the Supreme Lodge Knights of Honor; and constitute a warranty."

The certificate contains the following provision:

"The Supreme Lodge Knights of Honor, issues this certificate to Charles Pudritzky, a member of Cherusker Lodge No. 1,267, * * * and upon condition that the statements made by said member in his petition for member-

ship, and the statements made by him to the medical examiner, be made a part of this contract.   *   *   * The Supreme Lodge hereby agrees to pay, out of the Widow's and Orphan's Benefit Fund, to his wife, Dorothea Pudritzky, the sum of $2,000, in accordance with and under the laws governing this order, upon satisfactory evidence of the death of said member."

It is insisted by defendant's counsel that these statements and misrepresentations were material, and amounted to warranty.

The only controversy in the case is, did the answers made by Pudritzky annul the contract?  The proofs made by the defendant upon these questions are from the application and examination, and the testimony of witnesses.  From the application it appears that the following examination was made and answers given:

"13. Have you ever had any of the following diseases:
*   *   *   *   *   *   *   *   *   *
"Asthma?  No.    *   *   *   *   *   *   *
"Disease of the lungs?  Yes.
"Spitting of blood?  No.    *   *   *   *   *
"Any disease not mentioned?  Pneumonia, 11 years ago.
"P. S. Has entirely recovered, and has not been sick since."

Witness Julius Koch testified that he knew Pudritzky 12 or 14 years, and that 12 years ago he had a talk with him about his trouble with his lung

"Q. What did he say to you, if anything, with reference to whether he had ever been troubled with spitting blood?
"A. I saw him.  He looked bad; and I said, 'Pudritzky, what's the matter?'  He said, 'I have a bad lung.'
"Q. And he told you he was sick,—his lungs were bad, and he was spitting blood?
"A. Yes, sir; he was spitting blood."

Mr. Christian Horsback also testified that in the year 1874 Pudritzky quit his work in a sash and blind factory on account of his health, and that Pudritzky then told him he was so badly off he had to spit blood.

Defendant also put in evidence the application of Charles Pudritzky for membership in the Knights of Pythias, as follows:

"Application No. 376, of Charles Pudritzky, to section No. 22, endowment rank, K. of P. Disapproved Sept. 12, 1884. A. R. Booth, M. D., medical examiner in chief. Present condition, asthma."

In the application of Pudritzky in the present case, under section 17 he was asked the following question:

"*Q.* Have you ever been rejected by the medical examiner of any lodge or society?
"*A.* No."

To meet this testimony the plaintiff called as a witness Dr. J. H. Carstens, the examining physician of the Knights of Honor, and who was also the family physician of Pudritzky for many years. Dr. Carstens was shown the application and examination of Pudritzky, and examined as follows:

"*Q.* Is this your signature?
"*A.* Yes, sir; looks like it.
"*Q.* Is this Mr. Pudritzky's signature?
"*A.* Yes, sir.
"*Q.* Who filled out these?
"*A.* I filled out all these things.
"*Q.* From whom did you get the information?
"*A.* From Mr. Pudritzky, except some I knew myself, I filled it out myself; for instance, about his former sickness. I filled that out without asking him about it. All those questions I filled out myself.   *   *   *   *   *   *
"*Q.* Did he answer these questions there?
"*A.* Yes, sir. I asked him all these questions, and put down the answers according to how he gave them to me, except some of them, where I knew all about it, I put them down myself without asking him any particular details."

The witness also testified that he had treated Mr. Pudritzky and his family for 15 years, whenever he was sick, and knew him well, and saw him very often,—almost every day or two. Witness was then shown the question in the exami-

nation: " Have you ever been rejected by the medical examiner of any lodge or society? " and was asked:

" *Q.* Did you answer that question ' No?'

"*A.* Yes, sir.

" *Q.* Explain why it was answered ' No.'

"*A.* I asked Pudritzky, ' Have you ever been rejected by any other lodge or society? ' He says, ' No, I have not, and I have.' He says, 'I intended to join the endowment rank of the Knights of Pythias, and I went to their doctor to be examined, and he looked at me, and he says: " Why, you have got the asthma; you cannot pass anyhow;" and he refused to examine me.'

" *Q.* And so he refused to examine him?

"*A.* That is what he told me. I said: ' That is all nonsense. I have known you for a dozen years, and I have come in your house, in and out. I did not see you have any asthma. I do not see how you can. There must be something wrong there. And if he did not examine you I do not see why you can say that; and you have not the asthma,   * * *   and I will put it down ' No.'

" *Q.* How long have you known him?

"*A.* I had known him a dozen years; had treated him eleven years before for inflammation of the lungs; he spit up blood. He did not have asthma at that time, that I knew of. I knew him down to the very day of his death."

Plaintiff's counsel contend that the uncontradicted testimony of Dr. Carstens establishes the following facts:

1. That the spitting of blood was a temporary ailment, the result of pneumonia, many years before, and from which deceased had entirely recovered long before the application was made.

2. That Pudritzky never had asthma.

3. That Dr. Carstens was the agent of the defendant company, and assumed to answer the questions in the application without consultation with the deceased, and entirely upon his own knowledge, obtained from prescribing for and acting as Pudritzky's family physician.

3. That the answer "No" to the question, " Have you ever been rejected by the medical examiner of any lodge or society? " was fairly explained to the agent of the defendant company, and that the agent, upon this explanation, decided for Pudritzky, and wrote the word " No."

Defendant introduced some testimony tending to show that after this application was made to the Knights of Pythias, and after the medical examiner had made the indorsement of rejection upon the application, the secretary notified Mr. Pudritzky of his rejection by letter.   It is contended, however, by plaintiff that there is no evidence that Pudritzky ever received the letter.   Plaintiff's counsel also contend that the court was in error in admitting in evidence the application for membership in the Knights of Pythias,—

1. Because it did not tend to show that Pudritzky was rejected by the medical examiner of any other lodge or society.

2. Because the law does not make an unsworn certificate of an officer in a foreign corporation evidence.

It appears from the record that Pudritzky died from granular disease of kidneys, and not from any of the diseases or ailments to which these several questions relate.   There is no evidence in the case that the deceased had been troubled with any ailments for 11 years prior to the time of making this application, and no evidence but that at the time of making the application he was a man in good health, and free from disease.

He joined the order in November, 1884, and continued in it until he died, in 1887.   At the time of his medical examination, under his application for membership, there is no evidence but that he was in good health.   The examination was conducted by the medical examiner of the order, who was also the family physician of the deceased, and by reason of his knowledge and intimacy with his physical condition he was able to write down the answers to many of the questions without consultation with him.   Dr. Carstens, from his testimony, knew, at the time he wrote the answer to the question about his spitting blood, that some 11 years before that deceased had some lung trouble, and had then spit blood; yet he evidently regarded it as a mere temporary ailment, the

result of the malady with which he was then afflicted, and from which he had fully recovered; and if he took upon himself to write the answer "No," being aware of all the facts, the deceased could not be charged with making false statements in that particular. Dr. Carstens was then the agent of the order, fully cognizant of all the facts.

As was said by this Court in *Brown v. Metropolitan Life Ins. Co.*, 65 Mich. 306 (32 N. W. Rep. 610), a mere temporary ailment or indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy or certificate void.

But in the present case, if the testimony of Dr. Carstens is true, he assumed to write out the answers to the questions upon his own knowledge of the facts, rather than from the answers given by the deceased. Whether this is in fact true was for the jury, and should have been submitted to them. If it is true that Dr. Carstens, acting as the agent of the company, assumed to do this, the order is not in a position to claim that the answers were untrue. *McArthur v. Home Life Association*, 73 Iowa, 336 (35 N. W. Rep. 430); *Dunbar v. Phenix Ins. Co.*, 72 Wis. 492 (40 N. W. Rep. 386); *Temmink v. Metropolitan Life Ins. Co.*, 72 Mich. 367 (40 N. W. Rep. 469).

The court was also in error in receiving in evidence, under plaintiff's objection, the application, and pretended rejection indorsed thereon, of the deceased for membership in the Knights of Pythias. There was no proof in the case that Mr. Booth, the medical examiner of that order, ever rejected the deceased from that order under a medical examination, except his indorsement appearing upon the application. This indorsement was not competent evidence to prove the fact of such rejection, or that the deceased had asthma, and, even if this was some evidence of the fact, it was contradicted by Dr. Carstens, and became a question for the consideration of the jury.

The case presents in many points questions of fact that belong to the province of the jury to determine, and the court was in error in holding as a matter of law, as the issues were presented, that no recovery could be had.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred.

CHAMPLIN, J.  I concur in reversing the judgment.