NEW YORK LIFE INS. CO. v. RUSSELL.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1896.)

No. 754.

1. CONFLICT OF LAWS—APPLICATION FOR INSURANCE—SOLICITING AGENT.
　　Under the statute of Nebraska (Comp. St. 1893, c. 16, § 8) providing that any person in the state who shall receive or receipt for money for an insurance policy, or shall in any way cause a contract of insurance to be made, for or on account of an insurance company, shall be deemed, to all

intents and purposes, an agent of such company, a policy made by an insurance company through a local agent in Nebraska must be regarded as a Nebraska contract, notwithstanding a clause in the application that the policy should be construed according to the laws of New York, the place of the contract being agreed to be the home office of the company.

2. LIFE INSURANCE—REPRESENTATIONS IN APPLICATION—ANSWERS WRITTEN BY AGENT.

Under said statute and the decisions of the supreme court of Nebraska, when an applicant for life insurance has fully and in good faith disclosed to the agent in the state who received his application the facts in relation to an inquiry material to the risk, and such agent has written into the application an answer which he assures the applicant is the proper one, but which turns out to be incorrect, the company is bound by the information so communicated to its agent, and is estopped to set up the falsity of the answer, notwithstanding a clause in the application that no statements, etc., made to the person taking the application for the policy, shall be binding on the company, unless reduced to writing, and presented to the officers of the company. Insurance Co. v. Chamberlain, 10 Sup. Ct. 87, 132 U. S. 304, followed.

3. SAME—ADVICE OF AGENT AS TO ANSWERS.

An applicant for insurance, in reply to the inquiry whether he had ever had a disease of the kidneys, told the agent taking his application that he had been treated for diabetes, some years before, by a physician in Scotland. The agent then caused the applicant to be examined by the company's local examiner, who told him he did not have diabetes, that the Scotch physician had been mistaken, and that the proper answer to the question was "No." The applicant believed this statement, and the blank in the application was filled in "No" by the agent. It afterwards turned out that the applicant did have diabetes, from which he died. *Held*, that the company was bound by the knowledge disclosed to the agent, and estopped to dispute its liability on the ground of the falsity of the answer.

In Error to the Circuit Court of the United States for the District of Nebraska.

This action was commenced by Eliza H. Russell, the defendant in error, against the New York Life Insurance Company, the plaintiff in error, in the district court of Holt county, Neb., and was removed from that court into the circuit court of the United States for the district of Nebraska, on the petition of the plaintiff in error.

The cause was tried before the court, on the following agreed statement of facts:

"It is hereby stipulated and agreed between the parties hereto that the above-entitled case shall be heard, tried, and decided upon the facts hereinafter stipulated, namely: That on or about the 21st day of January, 1894 [1893], one Andrew Russell, now deceased, made application for the policies of insurance upon his life, true copies of which policies, with application copied therein, are set forth in plaintiff's petition, the originals to be presented with this stipulation at the final submission of the cause. That, at the time such application for said policies was made, one E. H. Cress and one John A. Golden were agents for the defendant, having authority to solicit and procure applications for insurance, receive premiums therefor, and deliver policies. That one Dr. C. B. D. Eisaman was the duly appointed and constituted medical examiner for the defendant at the town of O'Neill, Holt county, Neb. That, some time prior to the date of the application for insurance above stated, the said agents of the company solicited the said Andrew Russell that he make application through them, as agents of the defendant company, for insurance upon his life. That, as the result of such conversation, the said Andrew Russell finally, on the date above set forth, came before these said agents and medical examiner, for the purpose of ascertaining if he was a fit and proper person to receive and enter into a contract for insurance upon his life. That, in the examination of the said Andrew Russell for such insurance, he stated to said agents and said medical examiner, Dr. Eisaman, 'that he (Andrew Russell) was afflicted, as he had been informed four years

before by a physician in Scotland, where he then resided, with diabetes, and that he had consulted that physician, and that such physician had given his opinion that the said Andrew Russell was afflicted with diabetes, and had treated him a few weeks for such disease; that such physician did not live in O'Neill, but in Scotland, Europe; and that the said Andrew Russell had not been treated for several years for any disease whatever by any physician. That thereupon the said agents, E. H. Cress and John A. Golden, desired that the said Andrew Russell be examined by the medical examiner of the company, Dr. Eisaman, so that it could be ascertained and known as a fact, whether or not the said Andrew Russell did in fact have diabetes. That, in. compliance with such desire on the part of said agents, the said Andrew Russell submitted to an examination as to his physical condition, and especially as to the disease named and called 'diabetes,' by the said Dr. Eisaman, examiner of the company. That Dr. Eisaman made an extended and thorough examination as such medical examiner of the said Andrew Russell, and, after such examination, informed and told said Andrew Russell that he did not have diabetes or any other disease, and assured him that, if any physician theretofore had told him that he had such disease, such physician was mistaken; and he further assured the said Andrew Russell that he was a fit and suitable person to receive a policy of insurance upon his life. That during such examination, and prior thereto, the said Andrew Russell had told the said agents and said medical examiner each and every fact pertaining to his prior consultation with a physician, and concealed nothing from them in relation thereto. That said Andrew Russell believed that Dr. Eisaman was a competent and skillful physician, and relied upon his examination, and believed that the said Dr. Eisaman told him the truth, and believed that the opinion theretofore given by the physician in Scotland was a mistaken one in the fact of his having diabetes. That he relied on such examination as made by Dr. Eisaman, and believed the same to be true, and entered into the contract of insurance, signed the applications as prepared by said agents, and signed the 'statement to medical examiner,' as prepared by said medical examiner, believing that said statement contained all the facts stated by him to said agents and the medical examiner. That the agents prepared said application, and the medical examiner prepared statement to medical examiner, a copy of which is attached to the answer of the defendant, and marked 'Exhibit B.' That the said Andrew Russell believed that the 'statement to medical examiner and application' contained all statements made by him to them, and did not read the same, although competent to do so, but subscribed his name thereto without reading it, and without knowing its contents. That after the completion of such examination, and after said Andrew Russell had signed said application, and stated the facts to the medical examiner, and had departed for his home, said Dr. Eisaman then prepared his private report to the defendant, called 'Medical Examiner's Report,' a copy of which is attached to the defendant's answer, and marked 'Exhibit C.' That said report was forwarded to the defendant, and received by it before the issuing of the policies in suit. That said Andrew Russell had no knowledge as to its contents. That on or about the first day of February, 1893, the four policies in suit were received by the agents, E. H. Cress and John A. Golden, from the defendant; and that said Andrew Russell was thereupon notified that the defendant had accepted his risk, and had forwarded the policies; and that said policies were ready to be delivered to him on receipt of premiums therefor. That thereupon the said Andrew Russell paid to said agents four hundred ninety dollars ($490.00) premiums, and took delivery of said policies. That, in paying said premiums and accepting said policies. said Andrew Russell acted in good faith, without any intent or purpose to defraud the defendant whatsoever.

"It is further stipulated and agreed that the compensation of the said Dr. Eisaman for making said medical examination of the said Andrew Russell was paid by the defendant, and in no manner depended on the question whether or not the application would be accepted. It is further stipulated and agreed that said Andrew Russell did in fact have diabetes at the time of his examination by Dr. Eisaman; and that he afterwards, in August, 1893, died of diabetes; and that diabetes is commonly known as a disease of the kidneys, and it is a very serious disease, and of doubtful curability. It is fur-

ther stipulated and agreed: That at the time of his examination by Dr. Eisaman, and the delivery to him of said policies, the said Andrew Russell was in apparent good health and vigor; and that on or about the 21st day of February, 1893, the said Andrew Russell became somewhat ill, and thereupon determined to go to Carlsbad, Germany, to bathe in the Carlsbad waters, and to ascertain what, if any, disease he was really afflicted with; and that, on or about the first day of August, he returned to the town of O'Neill, Neb., and there died, on August 21st. That the plaintiff made due proofs of the death of the said Andrew Russell according to the terms, conditions, and requirements of the policies in suit. It is further stipulated and agreed that afterwards, and before the commencement of this action, the defendant tendered back to the plaintiff, who is the beneficiary named in the policies in suit, the full amount of premiums paid by the said Andrew Russell, deceased, for said policies of insurance, and denied liability on said policies. It is further stipulated and agreed that, in the construction and interpretation of the stipulation, there shall arise all such implication and inference of fact from all the foregoing statements in the same manner and with like effect as if the statements of facts contained in this stipulation had been testified to by credible witnesses. It is further stipulated and agreed that either party may file such amendment, if so advised, as may be thought necessary to make the pleadings conform to this stipulation. It is further stipulated and agreed that while the said Andrew Russell was at Carlsbad, Germany, he was treated for diabetes."

Upon the foregoing agreed statement, the court's findings of facts and conclusions of law were as follows: "(1) Under the facts of this case, the contract, being initiated and completed in the state of Nebraska, is to be governed by the laws of this state. (2) According to the law of the state of Nebraska, as settled by repeated decisions of the supreme court of this state, the parties acting for the insurance company in soliciting the insurance in question, in preparing the application, and in making the medical examination, were in fact and in law the agents of the defendant, and were not the agents of the plaintiff, or of the applicant for insurance. (3) It appearing that the applicant for insurance, Andrew Russell, in good faith fully stated to the agents of the insurance company the facts as they existed, and all the facts called for by the questions in the application, and that the agents of the company filled out the application, and exercised their judgment as to the form of the answers, having full knowledge of the facts, and that the applicant signed the application in the honest belief that the same contained the facts as he had stated them, it must be held that, if the answers in the application were not such as should have been written therein, the fault, error, or mistake was that of the agents of the company, and not that of the applicant; and the company is now estopped from asserting that the applicant must be bound thereby, or from asserting that the answers given in the application should have been in fact other or different from those written therein by their own agents; and I therefore hold that the plaintiff is entitled to judgment in this case for the full sum of said policies of insurance, with interest." Thereupon judgment was rendered for the plaintiff for the full amount of the policies and interest, and the defendant sued out this writ of error.

The application for the policies contained, among others, the following provisions: "No agent has power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise or making or receiving any representation or information. These powers can be exercised only by the president, vice president, second vice president, actuary, or secretary of the company, and will not be delegated." "I do hereby agree as follows: (1) That the statements and representations contained in the foregoing application, together with those contained in the declarations made by me to the medical examiner, shall be the basis of the contract between me and the New York Life Insurance Company; that I hereby warrant the same to be full, complete, and true, whether written by my own hand or not; this warranty being a condition precedent to, and a consideration for, the policy which may be issued hereon. (2) That inasmuch as only the officers at the home office of said company, in the city of New York, have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations referred to, no statements, representations, promises, or information made or given by or to the person soliciting or taking this application for a policy, or by or to any

other person, shall be binding on said company, or in any manner affect its rights, unless such statements, representations, promises, or information be reduced to writing, and presented to the officers of said company, at the home office, in this application. * * * (4) That any policy which may be issued under this application shall not be in force until the actual payment to, and acceptance of, the premium by said company or its authorized agent, during my lifetime and good health. (5) That the contract contained in such policy and in this application shall be construed according to the law of the state of New York, the place of said contract being agreed to be the home office of said company in the city of New York." The policies contained this provision: "This contract is made in consideration of the written application for this policy, and of the agreements, statements, and warranties thereof, which are hereby made a part of this contract." The company's medical examiner asked the questions contained in the blank for the medical examination of the applicant, and in answer to this question, "Have you had since childhood any of the following complaints: Diseases of the kidneys, diseases of the urinary organs?"—the medical examiner of the company who was examining the applicant and taking down his answers, under the circumstances detailed in the agreed statement of facts, wrote the answer "No" to the foregoing question, and transmitted the examination in that form to the home office.

Judge Shiras, who tried the case below, filed the following opinion:

"In view of the ruling of the supreme court of the United States in the case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, relied upon by the defendant herein, and in the cases of Insurance Co. v. Wilkinson, 13 Wall. 222, and Insurance Co. v. Mahone, 21 Wall. 152, and Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, and of the court of appeals for this circuit in Insurance Co. v. Robison, 7 C. C. A. 444, 58 Fed. 723, relied upon by the plaintiff, it must be admitted that the question of the right of recovery is one of grave doubt. With regard to the apparent divergence in the rules followed in the cases cited. it grows, in my judgment, out of the different states of fact made to appear in the cases. If it is made to appear in a given case that there was any lack of good faith on the part of the applicant, or that there has been any connivance between the applicant for insurance and the agents of the company, whereby a favorable case for obtaining the desired insurance is made out, then it should be held that the applicant must be held responsible for all that is contained in the application; and ordinarily the fact that an applicant does not read over the application before signing it will not relieve him from liability for its contents. On the other hand, if there is some matter comes up in regard to which doubt may exist, and the applicant in good faith fully states all the facts known to him, to the agents of the company, and they make further investigation, and satisfy themselves in regard to the same, and, having done so, they write out the answer to the question as they deem it should be answered, and the applicant, acting in good faith, relies upon the conclusion the agents have reached, and accepts their conclusion, and signs the application, why should not the company be bound by the acts of its own agents? For illustration, take the material question which it is claimed was wrongly answered in this case, to wit: 'Have you had, since childhood, disease of the kidneys? Answer "Yes" or "No." ' It is clear from the form of the question, from the form of the application, which gives only space for a word in answer, and from the express declaration that the answer must be 'Yes' or 'No,' that the company required not a full statement of circumstances, but a concrete answer by a single word. The applicant stated to the agents the full facts in regard to his consultation with a physician in Scotland some four years before. He could not say with certainty whether he had or had not had a disease of the kidneys. It is then suggested that he be examined by the surgeon and physician of defendant. As a result of that examination, he is assured that he never had had diabetes. The agents of the company, having full knowledge of all the facts, knowing all that the applicant did, wrote out the answer 'No' to the question, and the applicant signed it. It is now insisted that the applicant should have insisted upon having the answer written 'Yes,' although it is admitted that, when the applicant signed the application, he then believed in good faith that he never had had the diabetes, and had been led to entertain that belief by the action of the agents of the company. In making the examination of the applicant, the examining physician was acting for the company, and it was upon the examination then made by him, and upon which

the applicant relied, that the company acted in issuing the policy. Suppose an applicant, on being examined by the physician of the company, should state to him that he was affected in certain ways, but did not know whether it was disease 'A' or disease 'B'; and thereupon the physician should thoroughly examine the applicant, and should tell him the disease was 'A,' and the applicant, relying upon such statement, should so name the disease in the application; would he not be protected in so doing? So, if an applicant, being in doubt whether he had or had not had a certain disease, should fully and in good faith state the whole facts to the company's physician, and the latter should fully satisfy himself as to the situation, and should inform the applicant that he had never had a named disease, would not the latter be justified in relying upon the conclusion of the company's physician when required to answer a given question in the medical examination? The question in this case which it is urged was wrongly answered was one to be asked by and answered to the medical examiner, and the contention of the company is that after the whole facts, as known to the applicant, had been stated to the medical examiner, and he had fully examined the applicant, and had, as a result of such examination, informed the applicant that he never had had diabetes or a disease of the kidneys, the applicant, though fully believing what the examiner told him, should have answered 'Yes,' instead of 'No.'

"Under the agreed facts of this case, the question resolves itself to this: Can the company in regard to a matter not within the absolute knowledge of the applicant, but with regard to which it requires from the applicant an answer limited to 'Yes' or 'No,' be heard to say, as a means of defeating the policy, that the applicant should have answered 'Yes' instead of 'No,' when it appears that the applicant, being in doubt as to the proper answer, in good faith submitted the entire facts to the agents of the company, and by their direction submitted himself to an examination by the medical director of the company, and, as a result of such examination, was informed that the answer should be 'No,' and relying thereon, and believing that the answer should be 'No,' he signed an application containing such answer. As already said, in my judgment the company cannot rely upon the alleged falsity of an answer thus obtained. I believe in exacting from an applicant for insurance the utmost good faith in fully stating to the agents of the company all the facts known to him affecting the question of the insurability of his life; but, on the other hand, good faith is equally demanded of the company. The soliciting agents and medical examiner are selected by the company, and these are the persons to whom all the statements required from the applicant are to be made in the first instance. If the applicant, in good faith, discloses in full to them all the facts known to him in regard to a particular matter, and especially where it appears, as it does in this case, that, if left to himself, the applicant would have answered a given question in the affirmative, but the agents, being in doubt as to the actual fact, and therefore in doubt as to the answer that should be given, require the applicant to submit to a full examination by the accredited medical examiner of the company, and the examiner decides that the fact and situation require the answer to be in the negative, and the applicant in good faith accepts that conclusion, and, believing in the truth thereof, signs an application made out by the agents and examiner, in my opinion it would be fraud to permit the company to aver that the answer thus obtained is incorrect, and to hold that the company can avoid payment of a policy, because the company, through its agents and medical examiner, they acting in good faith, dictated the answer, and induced the applicant to accept it as the proper one under the circumstances.

"The point is not whether, under the matters contained in the written application, the company can be bound by statements or representations made by the applicant, and not recited or set forth in the application, but whether the company shall be permitted to aver that an answer to a given question in the application should have been 'Yes,' instead of 'No,' when it appears that the medical examiner of the company, after a full examination, determined the proper answer to be 'No,' and thus wrote it in the application, and then the agents and examiner induced the applicant to believe that to be the proper answer, and to sign the application with the answer in this form; it being admitted that all the parties acted in the utmost good faith, and without any intent to defraud. In my judgment, the case does not come within the principles of the Fletcher Case, but does come within those announced in Insurance Co. v. Chamberlain and Insurance Co. v. Robison; and, so holding, the plaintiff is entitled to judgment."

C. H. Lewis (A. L. Beardsley was with him on brief), for plaintiff in error.

James H. Macomber (M. F. Harrington was with him on brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, having stated the case as above, delivered the opinion of the court.

The applications for the insurance were made in Nebraska to a local agent doing business for the defendant company in that state, and the policies were delivered to the insured, and the premiums paid there. A statute of that state provides:

"Any person or firm in this state who shall receive or receipt for any money, on account of or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall receive or receipt for money from other persons, to be transmitted to any such company or individual aforesaid, for a policy or policies of insurance or any renewal thereof, although such policy or policies of insurance may not be signed by him or them, as agent or agents of such company, or who shall in any wise, directly or indirectly, make or cause to be made any contract or contracts of insurance, for or on account of such company aforesaid, shall be deemed to all intents and purposes an agent or agents of such company, and shall be subject and liable to all the provisions of this chapter." Comp. St. Neb. 1893, c. 16, § 8.

Under this statute, the policies in suit must be regarded as Nebraska contracts, to be governed and construed by the laws of that state, notwithstanding the clause in the applications "that the contract contained in such policy and in this application shall be construed according to the law of the state of New York, the place of said contract being agreed to be the home office of said company, in the city of New York." Wall v. Assurance Soc., 32 Fed. 273; Fletcher v. Insurance Co., 13 Fed. 526; Ehrman v. Insurance Co., 1 McCrary, 123, 1 Fed. 471; Berry v. Indemnity Co., 46 Fed. 439; Assurance Soc. v. Clements, 140 U. S. 226, 11 Sup. Ct. 822; Indemnity Co. v. Berry, 4 U. S. App. 353, 1 C. C. A. 561, and 50 Fed. 511.

The clause of the Nebraska statute which we have quoted came before the supreme court of that state for construction and application in the case of Insurance Co. v. Jordan, 29 Neb. 514, 45 N. W. 792. The agent of the insurance company, in answer to material questions in the application, wrote down false answers. The insured could not read, and claimed the answers had not been read to him. The application, which was signed by the insured, warranted the answers to be true. The court said:

"The attorneys for the insurance company contend that notwithstanding the fact that the application was filled out by an agent of the company, and the inability of Jordan to read, still he is bound by the terms of the application. Richmond was the agent of the insurance company, and, as such, represented it in filling out the application; and if he made out the same without inquiry as to the facts, or incorrectly, when the facts were stated to him correctly, the company will be bound thereby. Under our statute, an agent of an insurance company, in order to do business for his company in the state, must procure from the state auditor a certificate of authority showing that such company has complied with all the requirements of the law. This certificate must be renewed annually, and heavy penalties are provided for a failure to comply with the statute in this regard. Comp. St. c. 43, §§ 24–27. The agent of an insurance company authorized to

procure applications for insurance, and to forward them to the company for accept-. ance, are the agents of the insurers, and not of the insured, in all they do in preparing the applications, or as to any representations they may make to the insured as to the character and effect of the statements so made.   Kausal v. Association, 31 Minn. 17, 16 N. W. 430; Insurance Co. v. Gray, 80 Ill. 28; Mullin v. Insurance Co., 56 Vt. 39; Insurance Co. v. Weill, 28 Grat. 389; Ring v. Insurance Co., 51 Vt. 563.   Public policy and good faith require that the persons clothed by the insurance companies with power to examine proposed risks, and fill out, receive, and approve applications for insurance, shall bind their principals by their acts and knowledge acquired by them."

And in a later case (Insurance Co. v. Fallon [Neb.] 63 N. W. 860, 861) the court said:

"Indeed, counsel for the insurance company frankly admit that there are many decisions holding that where a party applies to an agent for insurance, and correctly states the facts, the company is liable, although the agent may not write in the application the answers given by the insured.   Insurance Co. v. Jordan, 29 Neb. 514, 45 N. W. 792, recognizes this principle.   It is true that in that case it appeared that the insured was unable to read.   But we do not think the distinction in the cases material.   When the insured states the facts correctly to the company's agent, he is not bound to exercise vigilance thereafter to determine whether the agent is exercising care or good faith in his transactions on behalf of the company.   In other words, the company is estopped from seeking to avoid its contract because of a mistake or fraud committed by its own agent, the insured having acted in good faith, although, perhaps, somewhat negligently."

Under the Nebraska statute and the decisions of the supreme court of that state which we have cited, this case is on all fours with the case of Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87. The Iowa statute on which that case was made to turn is the same in legal effect with the Nebraska statute, and the terms, conditions, and warranties contained in the application and policy in that case are, in substance and effect, identical with those contained in the policies in suit.   We have set out the conditions of the applications and policies in this case in the statement, and, that it may be seen that they are identical in legal effect with those contained in the application in the Chamberlain Case, we here extract from the report of that case the conditions of the application.   The application contained these clauses:

"And it is hereby covenanted and agreed that the statements and representations contained in this application and declaration shall be the basis of, and form part of, the contract or policy of insurance between the said party or parties signing this application and the said Continental Life Insurance Company, which statements and representations are hereby warranted to be true, and any policy which may be issued upon this application by the Continental Life Insurance Company, and accepted by the applicant, shall be so issued and accepted upon the express condition that if any of the statements or representations in this application are in any respect untrue, or if any violation of any covenant, condition, or restriction of the said policy shall occur on the part of the party or parties signing this application, then the said policy shall be null and void, and all moneys which may have been paid on account of said policy shall be forfeited to the said company.

"And it is hereby further covenanted and agreed that the officers of the said company at the home office of the said company, in Hartford, Conn., alone shall have authority to determine whether or not the policy of insurance shall be issued on this or any application, or whether or not any insurance shall take effect under this or any application.

"And it is hereby further covenanted and agreed that no statements or representations made or given to the person soliciting this application for a policy of insurance, or to any other person, shall be binding on the said company, unless

such statements or representations be in writing in this application when the said application is received by the officers of the said company at the home office of the said company in Hartford, Conn."

Among the "Provisions and Requirements" printed on the back of the policy are the following:

"(11) The contract between the parties hereto is completely set forth in this policy and the application therefor, taken together; and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing, signed by the president or secretary of the company, whose authority for this purpose will not be delegated.

"(12) If any statement made in the application for this policy be in any respect untrue, this policy shall be void, and all payments which shall have been made to the company on account of this contract shall belong to and be retained by the company."

The terms of the applications vary slightly in arrangement and phraseology, but not at all in their legal effect. In the Chamberlain Case the question was, as it is here, as to the effect of a false answer to a material question in the application. The agent of the company had written down the answer, and assured the applicant that it was the proper answer to make to the question, after the insured had made a full and truthful statement of the facts to the agent. The supreme court said:

"Among the numerous questions propounded in the application was the following: 'Has the said party [the applicant] any other insurance on his life? If so, where and for what amounts?' The answer, as it appears in the application, is: 'No other.' That answer, as were all the answers to questions propounded to the applicant, was written by the company's agent Boak. In reference to the above question and answer, the latter testified: "I asked him [Stevens] the question if he had any other insurance, as printed in the application, and as we ask every applicant; and he told me he had certain certificates of membership with certain co-operative societies, and he enumerated different ones, and said he did not know whether I would consider that insurance or not. I told him emphatically that I did not consider them insurance, and we had considerable conversation about it. He wanted to know my authority for saying I did not consider them insurance. I gave him my authority,—gave him my reasons; and he agreed with me that these co-operative societies were in no sense insurance companies, and in that light I answered the question "No." Q. Did you tell him at the time that the proper answer was "No." after he had stated the facts? A. I did. Q. Who wrote the answer in there? A. I did.' * * * Is the insurance company estopped, under these circumstances, to dispute its liability upon the policy? This question the plaintiff insists must receive an affirmative answer, upon the authority of Insurance Co. v. Wilkinson, 13 Wall. 222, Insurance Co. v. Mahone, 21 Wall. 152, and Insurance Co. v. Baker, 94 U. S. 610; while the defendant contends that the case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, requires it to be answered in the negative. An extended statement of those cases is not necessary, and therefore will not serve any useful purpose; for the present case can be determined upon its special facts, and upon grounds that did not exist in any of the others.

"By the first section of an act of the legislature of Iowa, approved March 31, 1880, entitled 'An act relating to insurance and fire insurance companies' (Laws Iowa, 1880, p. 209, c. 211), it is provided that 'any person who shall hereafter solicit insurance, or procure applications therefor, shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding.' * * * This statute was in force at the time the application for the policy in suit was taken, and therefore governs the present case. It dispenses with any inquiry as to whether the application or the policy, either expressly or by necessary implication, made Boak the agent of the assured in taking such application. By force of the statute he was the agent of the company in soliciting and procuring the application. He could not, by any act of

his, shake off the character of agent for the company. Nor could the company, by any provision in the application or policy, convert him into an agent of the assured. If it could, then the object of the statute would be defeated. In his capacity as agent of the insurance company, he filled up the application,—something that he was not bound to do, but which service, if he chose to render it, was within the scope of his authority as agent. If it be said that, by reason of his signing the application, after it had been prepared, Stevens is to be held as having stipulated that the company should not be bound by his verbal statements and representations to its agent, he did not agree that the writing of the answers to questions contained in the application should be deemed wholly his act; and not, in any sense, the act of the company, by its authorized agent. His act in writing the answer, which is alleged to be untrue, was, under the circumstances, the act of the company. If he had applied in person to the home office, for insurance, stating in response to the question as to other insurance the same facts communicated by him to Boak, and the company, by its principal officer, having authority in the premises, had then written the answer, 'No other,' telling the applicant that such was the proper answer to be made, it could not be doubted that the company would be estopped to say that insurance in co-operative societies was insurance of the kind to which the question referred, and about which it desired information before consummating the contract. The same result must follow where negotiations for insurance are had, under like circumstances, between the assured and one who in fact, and by force of the law of the state where such negotiations take place, is the agent of the company, and not, in any sense, an agent of the applicant. * * * 'No other,' having been written by its own agent, invested with authority to solicit and procure applications, to deliver policies, and, under certain limitations, to receive premiums, should be held as properly interpreting both the question and the answer as to other insurance."

The ruling of the supreme court in the case of Insurance Co. v. Chamberlain, supra, is decisive of the case at bar. It is extremely difficult to reconcile the case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, with the previous cases in that court of Insurance Co. v. Wilkinson, 13 Wall. 222, Insurance Co. v. Trefz, 104 U. S. 197, Insurance Co. v. Mahone, 21 Wall. 152, Insurance Co. v. Baker, 94 U. S. 610, Eames v. Insurance Co., Id. 621, and the later case of Insurance Co. v. Chamberlain, supra; and it confessedly is not in accord with the great majority of the state decisions. If the Fletcher Case is in conflict with the Chamberlain Case, then it must be held to be overruled by the later case. Whether overruled or not, it has no application to this case. In this case we are not called upon to inquire whether the Fletcher Case is still to be regarded as a binding authority on the federal courts in states which have not, by legislation, definitely fixed the relation which insurance companies sustain to those persons who solicit and take applications for insurance for them. Where that relation is declared by statute, as it is in Nebraska and some other states, to be that of principal and agent, the Chamberlain Case is an express authority that the Fletcher Case has no application.

The courts long ago decided that the agents of insurance companies authorized to solicit and receive applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurance companies in all they do in preparing the applications, and in any representations they make to the insured as to the character and effect of the statements therein contained, and that the companies would be held to a knowledge of all statements, representations, and information given by the insured, when making the application, to the agent, respecting the subject-

matter of the insurance. In a word, the courts applied to the relation between the insurance companies and their agents the well-settled rule of agency that all acts performed and all knowledge acquired by an agent in the conduct of the business of his agency are the acts and knowledge of the principal. After this doctrine had been established, the insurance companies, in order to evade it and escape liability for the acts and knowledge of their agents in the due prosecution of the business of their agencies, inserted in their applications and policies a provision to the effect that the persons soliciting or taking the application should be deemed the agent of the insured, and not of the insurer. This effort of the insurance companies to avail themselves of all the benefits of carrying on their business in the only way it could be carried on, through agents, and at the same time escape all the obligations and liabilities that attach to a principal who commits the conduct of his business to an agent, proved unavailing. The courts held that an insurance company could not convert its agent into an agent for the insured by merely calling him such in the application or policy. Insurance Co. v. Wilkinson, 13 Wall. 222; Insurance Co. v. Norton, 96 U. S. 234; Kausal v. Association, 31 Minn. 17, 16 N. W. 430; Insurance Co. v. Parsons, 47 Minn. 352, 50 N. W. 240; Follette v. Association, 107 N. C. 240, 12 S. E. 370; Association v. Matthews, 65 Miss. 312, 4 South. 62; Insurance Co. v. Harvey, 82 Va. 949, 5 S. E. 553; O'Brien v. Insurance Co., 52 Mich. 131, 17 N. W. 726; Eilenberger v. Insurance Co., 89 Pa. St. 464; Wheaton v. Insurance Co., 76 Cal. 415, 18 Pac. 758; Insurance Co. v. Capehart, 108 Ind. 270, 8 N. E. 285; Stone v. Insurance Co., 68 Iowa, 737, 28 N. W. 47; Meyers v. Insurance Co., 156 Pa. St. 420, 27 Atl. 39; Insurance Co. v. Myers, 55 Miss. 479; Sprott v. Association, 53 Ark. 216, 13 S. W. 799.

Without saying in terms that the agent of the company shall be deemed the agent of the insured, the application in this case declares that:

"No statements, representations, promises, or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on said company, or in any manner affect its rights, unless such statements, representations, promises, or information be reduced to writing, and presented to the officers of said company, at the home office, in this application."

The obvious purpose of this clause, like that which declared the agent of the insurance companies should be deemed the agent of the insured, is to enable the insurance company to escape from the necessary obligations and liabilities imposed by the law of agency on a principal who commits the conduct of his business to an agent. It is designed to evade a fundamental rule of the law of agency, and to shear its acknowledged agents of their appropriate and accustomed powers and duties, and impose them on the insured. If this application is to receive the construction contended for, no one can safely transact business with an agent of the company; for, while he would be bound by his acts and representations and any information communicated to him by the agent, the company will

not be bound by the acts or representations of its agent or any information communicated to him in the conduct of the business of his agency. Under such a rule, the rights and obligations of the contracting parties would not be reciprocal; contracts made with the company's agents would be one-sided; and the company could, at its own election, avail itself of the acts and representations of its agents when it was profitable to do so, and repudiate them when they were likely to prove burdensome. The company cannot play fast and loose in this manner. The persons who are authorized by the company to solicit insurance, take applications, or receive premiums in Nebraska are made by statute the agents of the company "to all intents and purposes"; and it is not in the power of the company to shear these statutory agents of the powers and authority with which the law, for the protection of the public dealing with the company, invests them. These powers are precisely those which an agent of an insurance company possesses, upon whose powers and authority no special limitations have been imposed.

The Iowa statute is similar to the Nebraska statute, and the supreme court, in Insurance Co. v. Chamberlain, supra, said:

"This statute was in force at the time the application for the policy in suit was taken, and therefore governs the present case. It dispenses with any inquiry as to whether the application or the policy, either expressly or by necessary implication, made Boak the agent of the assured in taking such application. By force of the statute, he was the agent of the company in soliciting and procuring the application. He could not, by any act of his, shake off the character of agent for the company; nor could the company, by any provision in the application or policy, convert him into an agent of the assured. If it could, then the object of the statute would be defeated."

Insurance companies perfectly understand the fact that these applications, which are framed by themselves, and furnished to their agents, are filled up, and the answers to the questions written down, by their agents, and that every applicant accepts without question the advice, direction, and assurance of the agents in all matters relating to the preparation of the application. This is a part of the duty of such agents, and the applicant has a right to assume that they will discharge it intelligently and honestly. He has a right to assume, also, that the agent will honestly and faithfully discharge his duty to his principal. In this case it was the duty of the company's medical examiner to make the report called for by the clause of the application last quoted, if the answer to the question and the information communicated to the medical examiner made such report necessary. This was a duty required of the medical examiner by the company. It would be unprecedented and unreasonable for an applicant to take into his own hands the preparation of the medical examiner's report, and, in doing so, disregard the express advice and direction of the company's medical examiner.

In considering this question, the supreme court of Texas said:

"The answers are usually 'Yes' or 'No,' and, from the space allowed for them in the form used, it is evident they are required to be monosyllabic. He had undertaken to make true answers; and he must be presumed to have known that the object of having them written down was to furnish information to the absent

officers of the corporation of material importance to them in determining whether or not they would execute the contract. Where there were no circumstances to excite his suspicion to the contrary, we see no reason, however, why he may not have trusted to the medical examiner's correct and honest performance of his' duty. We do not think his contract or 'the exercise of ordinary prudence demanded of him to assume that there was any want of capacity, care, or honesty on the part of the medical examiner, or made it his duty to assume the exercise of a supervisory power over the work of that officer. As a general rule, no doubt, the subjects of insurance will be but little qualified for such a task." Assurance Soc. v. Hazlewood, 75 Tex. 348, 12 S. W. 621.

In Michigan, where the applicant answered truthfully, and a medical examiner of the company wrote down an erroneous answer, the court said:

"If it is true that Dr. Carstens, acting as agent of the company, assumed to do this, the order is not in a position to claim that the answers were untrue." Pudritzky v. Supreme Lodge, 76 Mich. 428, 43 N. W. 373.

And in Arkansas the rule is that:

"When a medical examiner, authorized by an insurance company to fill up blanks for answers to questions to be propounded to applicants for insurance in a medical examination, or to fill them up is within the apparent scope of his authority, does so by writing false answers, and thereafter procures the signature of the applicant thereto, after he had given correct answers to the questions, and the company afterwards receives the premiums, and issues a policy, the company will, upon the death of the insured, be estopped from insisting on the falsity of the answers, although warranted to be true." Per Battle, J., Assurance Soc. v. Reutlinger, 25 S. W. 835, citing Insurance Co. v. Brodie, 52 Ark. 11, 11 S. W. 1016; Flynn v. Insurance Co., 78 N. Y. 568; Grattan v. Insurance Co., 80 N. Y. 281, 92 N. Y. 274; Insurance Co. v.. McMurdy, 89 Pa. St. 363; Pudritzky v. Supreme Lodge, 76 Mich. 428, 43 N. W. 373; Insurance Co. v. Hazlewood, 75 Tex. 348, 12 S. W. 621.

This is the doctrine laid down by this court in Insurance Co. v. Robison, 19 U. S. App. 266, 7 C. C. A. 444, and 58 Fed. 723.

Under the Nebraska statute, the agents and medical examiner of the defendant company were "to all intents and purposes" the agents of the company; and, in their respective spheres, they possessed all the powers and authority conferred on agents and medical examiners of insurance companies by an unqualified appointment as such. It results that the information communicated by the applicant to the company's agents and medical examiner was, in contemplation of law, communicated to the company itself; and the company, therefore, having issued the policy with knowledge of all the facts, will not be heard to defend upon the ground that these facts were not fully set out in the report of its agents or medical examiner. We concur fully in the conclusion reached by the learned judge who tried the case at the circuit, whose opinion is inserted in the statement of the case. The judgment of the circuit court is affirmed.