### THURINGIA INS. CO. OF ERFURT, GERMANY, v. GOLDSMITH.

(Circuit Court of Appeals, Eighth Circuit. August 24, 1904.)

No. 1,909.

**1. INSURANCE ON MOVABLE PROPERTY—TRANSFER OF POLICY TO PROPERTY IN NEW LOCATION—ACTS OF AGENTS AFTER LOSS.**

Where a clerk in the office of a firm of insurance agents, in the name of the firm and by indorsement upon a policy insuring a stock of merchandise against loss or damage by fire while located in a designated building, transferred the insurance to the same property in another location, where it was subsequently damaged by fire, acts and conversations of the agents, occurring after the fire and persuasively tending to show that they respected the transfer and treated it as obligatory, were competent and substantial evidence upon the issue whether the clerk had general authority from the agents to make such transfers, or, if not, whether this transfer was known to and approved by them before the fire, and justified the submission of that issue to the jury.

In Error to the Circuit Court of the United States for the District of Nebraska.

H. C. Brome and A. H. Burnett, for plaintiff in error.

R. S. Hall, J. H. McCulloch, and J. J. O'Connor, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and SHIRAS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action by Goldsmith to recover upon a policy insuring him against loss or damage by fire to a stock of merchandise while located in a designated building. The question tried was whether the agents of the insurance company had by indorsement upon the policy transferred the insurance to the same property in another location. A judgment for defendant upon a directed verdict was heretofore reversed because in the opinion of this court there was sufficient evidence of a transfer to require the submission of the question to the jury. Goldsmith v. Thuringia Insurance Co., 52 C. C. A. 534, 114 Fed. 914. A second trial resulted in a verdict and judgment for plaintiff, and the case is now here upon an exception to the court's charge, which, in effect, instructed the jury that a transfer indorsed upon the policy before the loss by Miss Dunn, a clerk for Brennan, Love & Co., agents for the insurance company, was binding upon the company if she had authority from the agents to make such transfers, and made this indorsement intending it to be operative at the time, or if her indorsement of a transfer upon this policy was known to the agents and approved by them before the loss. It is complained that there was no evidence that Miss Dunn had authority from the agents to make such transfers, and that the jury should have been restricted to determining whether before the loss the agents were aware of, and approved, what was done by Miss Dunn in this instance. That the company was bound by her indorsement if she was acting under general or specific authority from the agents cannot be questioned, in the presence of the evidence otherwise showing her relation to the insurance business transacted by these agents. Comp. St. Neb. 1901, cc. 16, 43, §§ 1683, 3436; N. Y. Life Ins. Co. v. Russell, 23 C. C. A. 43, 77 Fed. 94; Pollock v. German Fire Ins. Co. (Mich.) 86 N. W. 1017.

The fire occurred May 25, 1898, shortly after 6 o'clock in the evening. The stock of merchandise had been removed from the location designated in the policy to another two or three days before. A. J. Love, of Brennan, Love & Co., saw the merchandise being removed, and then told the insured's agent that the insurance would not be transferred to the merchandise in the new location. On the morning of the 25th, after the removal was completed, the insured's agent sent the policy to Brennan, Love & Co.'s office by a messenger, with the request that the insurance be transferred by indorsement upon the policy. Mr. Love was absent, and Miss Dunn, who was apparently in charge of the office, listened to the request, and received and retained the policy. The messenger testified that she said he would have to leave the policy, as no one was there at the time to sign a transfer. Miss Dunn testified that she told the messenger she would rather see Mr. Love before anything was done about the transfer. Later in the day, and before the fire, the transfer so requested was indorsed upon the policy by Miss

Dunn in the name of Brennan, Love & Co. The policy was then placed in a basket on the top of her desk, and the next morning, when it was called for by the same messenger, it was handed to him by an office boy. Miss Dunn and all the members of Brennan, Love & Co. were absent at the time. Miss Dunn testified that she did not refer the matter of making this transfer to Mr. Love or any member of the firm, and "I had signed removal slips before, but referred them to Mr. Love; if Mr. Love said it was all right, I would attach the signature of the firm. It may have happened sometimes that I attached the signature of the firm to removal slips without speaking to Mr. Love about it, if any one wanted anything on the moment, and I knew about it, and knew it was all right; but it was very seldom I did. I generally left these things for Mr. Love; but when anything happened, I sometimes did it, and I signed it in this case, but I did not relinquish the policy." Thomas Brennan, one of the partners in Brennan, Love & Co., testified:

"Mr. Shields and Miss Dunn attend to the insurance business. Mr. Shields has no authority over Miss Dunn; he is a solicitor. Miss Dunn attends to the insurance business when Mr. Love is absent. Miss Dunn consults with Mr. Shields about the insurance in Mr. Love's absence, but she might transact it without consulting him. * * * I signed policies, but did not place the insurance; determined nothing about the risk, simply signed what was handed me, and Miss Dunn did the rest."

Love testified that he first learned about the indorsement of a transfer upon the policy the next morning after the fire. That morning he went to the plaintiff's new location, had a short interview with him about the fire, said nothing about the transfer of the insurance being unauthorized, and, in answer to plaintiff's request for an early settlement of the loss, said he would send an adjuster around. Later, and during the forenoon of that day, Brennan, Love & Co. sent to plaintiff written notice that the policy would be canceled at 12 o'clock noon, "subject to a loss which occurred at 6:18 p. m. yesterday," and saying:

"For any fire which might occur from 12 o'clock this day, this company will not in any way be liable. We give you this notice that you may have ample time to secure other insurance to-day if you so desire."

An adjuster was sent by Love to investigate the extent of the loss, and during the course of that investigation Love had another interview with plaintiff about the matter, but said nothing about the transfer of the insurance being unauthorized. There was testimony tending to show that Miss Dunn was without authority to make such transfers, and that her indorsement upon this policy was not authorized or approved. The terms of the policy were such that the insurance covered the merchandise only while it remained in the old location. The policy afforded plaintiff no protection, and subjected defendant to no responsibility, at the time of the fire, unless before that time the insurance had been transferred to the merchandise in the new location. The situation when the fire occurred was the criterion by which to determine the relation and rights of the parties. Nothing which the agents or Love

did or said after the fire could change the relation or rights of the parties at the time of the fire. All this was carefully and plainly stated in the court's charge, and the jury were told that evidence of the acts of the agents and of their interviews with plaintiff after the fire had been admitted only for the purpose of enabling the jury to determine therefrom, as well as from the testimony of the agents and others, whether when Miss Dunn indorsed the transfer upon the policy she was authorized to make such transfers and made this indorsement intending that it should be operative at the time, or, if not so authorized at the time, whether what she did was known to the agents and approved by them before the fire.

There was no error in the charge. When the case was here before, it was held that Miss Dunn's indorsement upon the policy and the conduct of the agents which we have recited were competent and persuasive evidence on the issue whether the agents were aware of and approved the transfer before the fire. They were equally competent and persuasive evidence that she was then authorized to make such transfers without the agents' knowledge or approval of each transaction. The evidence was competent and persuasive, because it tended to show that her act was respected by, and was treated as obligatory upon, those for whom it was apparently performed, and not because it tended to disclose the manner in which it became obligatory. If her act was unauthorized when done, and was without approval at the time of the fire, then the subsequent acts of the agents and their interviews with plaintiff were at variance with the common experience of men. Those acts and interviews, coupled with Miss Dunn's virtual admission, when testifying for defendant, that she was accustomed to make such transfers when necessity therefor arose, and with the testimony of Brennan, one of the agents, that in Love's absence Miss Dunn attended to their insurance business, and exercised the controlling judgment therein, constituted substantial evidence that she had authority from the agents to make transfers of insurance like the one in controversy, and required that the question of her authority and of her intent in making the indorsement be submitted to the jury.

The judgment is affirmed.