## LANGAN v. ÆTNA INS. CO.

(Circuit Court, N. D. Iowa, Cedar Rapids Division. September 14, 1899.)

INSURANCE — CONSTRUCTION OF POLICY — OPTION TO REPAIR — ELECTION—APPRAISEMENT.

A fire insurance policy contained a provision, relating to both personal property and buildings insured, that in case of loss or damage the amount of the same should be ascertained or estimated by the parties, or. in case of disagreement, by appraisers to be selected, and that, when so estimated, and proof of loss made, the same should be payable 60 days after receipt

of such proof, but that "it shall be optional, however, with this company, to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged * * * within a reasonable time on giving notice within 30 days after receipt of the proof herein required of its intention so to do." It further provided that the company should not be held to have waived any provision or condition of the policy "by any act or requirement or proceeding relative to the appraisal." *Held*, that the estimate or appraisal was a preliminary to, or a part of, the final proof of loss required, and that participation by the company in an appraisal to ascertain the damage done to an insured building did not constitute an election on its part to pay such damage in money, which precluded it from thereafter exercising its option to rebuild or repair on notice given within 30 days after the award of the appraisers was made.

At Law. Action on a policy of fire insurance. Heard on motion to strike out parts of reply.

R. C. Langan and Walsh Bros., for plaintiff.

George S. Steere and Hayes & Schuyler, for defendant.

SHIRAS, District Judge (orally). From the discussion had in this case upon the motion to strike out parts of the reply it is made clear to the court that there is involved in the issues a question of law, the decision of which will materially aid counsel in determining the evidence to be introduced in the further progress of the case; and, as the parties have been heard upon this question of law, the court will indicate the views taken thereof at the present time. The action is based upon a policy of insurance issued by the defendant company upon a brick dwelling house owned by plaintiff, and situated in the city of Clinton, in this state. During the lifetime of the policy a fire happened, greatly injuring the building. Notice thereof was given to the company; appraisers were appointed to estimate the amount of the loss,—the parties not being able to agree thereon; an award fixing the amount of the loss was made and signed by two of the appraisers, and 30 days from the signing thereof the company, in writing, notified the insured that it elected to repair the injured building. The question of law now presented to the court is whether, under the terms of the policy, it was open to the company to repair or rebuild the injured premises, after having participated in an appraisement, the purpose of which was to ascertain and determine in money the amount of the loss caused by the fire to the premises insured. On behalf of the plaintiff it is claimed that if the company undertakes, in connection with the insured, to ascertain and determine the amount of the loss through the medium of an appraisement, it thereby loses its right to repair or rebuild the premises; that under the terms of the policy it is not open to the company to ascertain through an appraisement the amount in money of the loss it may be called upon to pay, and then to elect whether it will pay this amount or whether it will repair the premises in lieu thereof; that this election to repair the property must be exercised before the company takes any steps, under the provisions of the policy, for ascertaining the amount in money of the damage to the property insured; and that, if the company unites with the insured in the appointment of appraisers for the purpose of ascertaining the amount of the loss, such appraise-

ment being had, such action must be held to be an election on the part of the company to indemnify the insured by a money payment. The determination of the question thus presented is dependent upon the construction of the terms of the policy, which forms the contract between the parties, the portions of which, pertinent to the question, are as follows: In the body of the policy it is declared that:

"The company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insurer to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company, in accordance with the terms of this policy. It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice within thirty days after receipt of the proof herein required of its intention so to do; but there can be no abandonment to this company of the property described."

In a subsequent clause it is provided that:

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any act or requirement or proceeding relative to the appraisal, or to any exceptions herein provided for."

In construing contracts of insurance against fire it must be borne in mind that they are not contracts for the payment of a specific sum of money named, but are contracts of indemnity, whereby the company agrees to make good to the insured, up to the limit of the amount named in the policy, any loss or damage caused by fire to the property insured, by a payment in money, or by repairing, replacing, or rebuilding the property injured or destroyed. The mode in which the indemnity shall be given is usually left to the option of the company, which in each case, after a right to indemnity has accrued to the insured, must determine, within the time allowed it by the terms of the policy, whether it will repair or rebuild the property injured or pay in money the ascertained amount of the loss. It is not questioned in this case that under the terms of the policy issued by the company this right of election as to the mode of indemnifying the insured in case of loss by fire is secured to the defendant, the insurance company, but it is claimed that it must make the election before entering upon an appraisal of the loss caused by the fire; or, in other words, the contention of the plaintiff is that, if the company calls for an ascertainment of the extent of the damage caused by the fire to the insured property, or unites with the property owner in an appraisement of the damages, such action must be deemed in law to be an election on its part to pay the loss in money, and that the company cannot afterwards elect to make good the loss by replacing, repairing, or rebuilding the injured property or premises. The proceedings to be taken in case of a fire injuring or destroying property covered by insurance in the defendant company are clearly pointed

out in the policy, which forms the contract of the parties. Upon the happening of the fire it is made the duty of the insured to give notice thereof to the company, and to take proper charge of the property injured. Then the amount of the loss or damage is to be ascertained or estimated, it being expressly declared in the policy that "said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers." Under the former part of this clause in the policy, in order to establish a right to claim indemnity from the company, it is necessary that the insured shall have the amount of the loss or damage ascertained, and then to furnish proof thereof to the company. The ascertainment of the amount of the loss must be had in one of the modes provided for in the policy itself, to wit, either by the parties agreeing on the amount, or by having the same ascertained by appraisers; and by the express terms of the policy this ascertainment of the amount of the loss, either by agreement or by appraisement, forms an essential part of the proof which must be furnished to the company as a condition precedent to the right to maintain an action against the company, unless the furnishing thereof is waived by the company. Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945; George Dee & Sons Co. v. Key City Fire Ins. Co. (Iowa) 73 N. W. 594.

Turning now to the contract of the parties, what do we find therein provided as the steps to be taken upon the happening of a fire? In the policy it is provided that, in case loss or damage is caused to the insured property by fire, the insured shall forthwith give notice thereof to the company, and shall take all proper steps to protect the injured property from further damage. Then it is provided that the amount of the loss shall be ascertained either by the parties agreeing on the amount, or, in case they differ, then by an award of appraisers appointed in the mode pointed out in the policy; and, the amount of the loss having been thus determined, and satisfactory proof of the loss having been furnished to the company, then, in 60 days after receipt of such proof, the company becomes bound to pay the amount of the loss, it being, however, further provided that it shall be optional with the company to repair, replace, or rebuild the property lost or destroyed within a reasonable time, on giving notice of its intention so to do within 30 days after receipt of the proof required by the terms of the policy. Is there any possible doubt that the company, when it executed the policy in suit, had the option to fulfill its contract of indemnity, in case of loss, by either a money payment or by repairing or replacing the injured property? The plaintiff does not claim that this right to choose between two methods of performance was not secured to the company by the terms of the contract, but the contention is that, by entering into an appraisement in order to ascertain the amount of the loss, the company then elected between the two modes of performance, and could not afterwards exercise the right to repair the building. According to this contention, the company is compelled to make its election before joining with the insured in any steps looking to the ascertainment of the extent of the damage to the property insured; but what does the policy provide with respect to the time within which the company may elect to re-

place or repair the property? It is therein recited that "it shall be optional, however, with this company, to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within a reasonable time, on giving notice within thirty days after receipt of the proof herein required of its intention so to do." Clearly, there is thus secured to the company the right to elect to replace or repair the injured property within a period of 30 days from some named time or event. When does the 30-day period begin to run? Not from the date of the fire, nor from the date when the first notice thereof is given to the company, but from the date of "the receipt of the proof herein required." What proof is thus referred to? Can the reference be to any other matter save the proof provided for in the preceding sentence,—being the proof necessary to be furnished as a condition precedent to the maintenance of a suit, and which is required to be furnished in order to start the running of the 60-day period which must elapse after the receipt of proof by the company before the money payment becomes due and payable? The policy clearly points out the proof that must be furnished in order to fix a liability upon the company, and then, in effect, it provides that within 30 days from the receipt of this proof the company may give notice of its intention to replace or repair the injured property, and, if it does not give such notice, then in 60 days from the receipt of the proof it must pay the proper amount in money. Under the terms of this policy there is no other time designated for the beginning of the 30-day period within which the company has the right to give notice of its intent to replace or repair the injured property than the receipt of the proof of loss, and the only proof of loss provided for in the policy is that which, when furnished, will enable the insured to maintain an action against the company if the company does not meet the obligation on its part. This proof includes the ascertainment of the amount of the loss either by the agreement of the parties or by appraisement when they cannot agree. In order to set either or both the periods of 60 and 30 days secured to the company to running, it is necessary for the insured to furnish the proof required by the policy. These periods are intended to be set to running at one and the same time, and by one and the same event, to wit, the receipt by the company of the completed proofs of loss called for by the policy. Under a policy worded as the one under consideration, how can the insured terminate the election secured to the company of indemnifying the insured for a loss suffered by either replacing or repairing the property or by paying the amount in money? Can the company be compelled to make its election in any other way than by the insured furnishing the proofs of loss called for by the policy? In what way can the insured bring to an end the 30-day period within which the company may elect to repair, replace, or rebuild, except by furnishing completed proofs of loss to the company, thus setting the time to running? If, in order to secure the completed proofs of loss, it is requisite that an appraisement should be had, upon what ground can it be successfully maintained that if the company, as it is its duty to do, unites with the insured in

procuring an appraisement of the damages, the company thereby waives its right to determine, within 30 days after the receipt of the completed proof, whether it will replace or repair the injured property, or pay the damages in money? The argument is that, when the company unites with the insured in an appraisement of the damages, it thereby elects to pay the amount of the loss in money, but this construction of the contract certainly does violence to the language of the policy. Thus, in the body of the policy are found the words providing for the ascertainment of the loss by appraisers if the parties do not agree, the furnishing the completed proofs, and the obligation to pay within 60 days thereafter; and then follows the sentence already quoted, in which it is said, "It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged. * * *" The word "however" is here used in its conjunctive sense of "nevertheless" or "notwithstanding," and its reference is to the preceding sentence, the meaning thereof being that, notwithstanding the provision in the preceding clause, providing for payment in money within 60 days after receipt of the proofs of loss, it is optional with the company to elect to repair, replace, or rebuild the injured property, provided it gives notice of its intention so to do within 30 days after the receipt of the proofs. That it was not the intent of the parties to contract that, if an appraisement was had in order to ascertain the amount of the loss, such act should be deemed to be an election on part of the company to pay in money, is further evidenced by the clause found therein which recites that "this company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any act or requirement or proceeding relative to the appraisal." If the contention of plaintiff be sustained that the entering into an appraisal must be held to be a waiver on part of the company of its right to fulfill its contract of indemnity by replacing or repairing the damaged property, then the foregoing clause is rendered of no avail. This provision of the contract was evidently intended to secure to the company the right to have the amount of the damages caused to the insured property ascertained by an appraisal, without thereby losing any of its rights secured to it by the contract; yet it is now contended that, properly construed, the contract means that if the company does call for or unite in an appraisal of the damage, it thereby loses the right to replace or repair the property,—a right clearly provided for in the contract. That this cannot be held to be the true meaning of the clause securing to the company the option to replace or repair the injured property is evidenced by the other provisions therein found. This clause covers insurance upon personal as well as real property, and secures to the company an option in cases of loss to either kind of property. Where personalty is insured, it is provided, in case of injury thereto, that the company has the option to take any of the articles at such ascertained or appraised value; the meaning thereof being that the value of the articles of personal property is to be ascertained as it was before the fire, and the value thereof in their damaged condition, and then the company has the option to take the dam-

aged articles at the valuation fixed thereon, being in that event bound to replace the articles with others of like kind and quality, or to pay the insured the value of the articles before the fire injured them. This option in case of insurance upon personalty is secured to the company in the same clause or sentence of the policy that gives to the company the right to repair the building in cases of insurance upon realty, and the time within which these options may be exercised is the same in both instances, to wit, within 30 days from receipt of proofs by the company. Certainly, it must be true that in cases of insurance upon personalty the ascertainment by appraisement of the extent of the damages caused by a fire does not deprive the company of its option to take the damaged articles at the appraised value, and if an appraisement does not defeat the option secured to the company in a case of insurance upon personalty, why should it be held to have that effect in a case of insurance upon realty? The clause under consideration deals with both kinds of insurance in the same sentence. After providing for an appraisement, it is declared that it shall be optional with the company to take all or any part of the articles at the ascertained or appraised value, "and also to repair, rebuild, or replace the property lost or damaged with other of like kind or quality." This part of the sentence includes both realty and personalty. In case articles of personalty are injured or destroyed, they may be replaced with others of like kind and quality. In case a building is damaged or destroyed, it may be repaired or rebuilt. This part of the clause secures to the company the right to make good its contract of indemnity by replacing the personalty and by repairing or rebuilding the realty. For illustration: A policy of insurance of the form of that now under consideration is issued, covering, as frequently happens, a building and its contents, being articles of personalty. A fire happens, injuring the building, and destroying part of its contents and injuring the remainder. An appraisement is had for the purpose of ascertaining the extent and amount of the loss and damage to the building and its contents. The appraisers award that part of the personalty is a total loss, fixing the amount of the loss, and part is damaged, being of a certain value, and that the building has been injured in a given amount. Upon the receipt of proof of this appraisement, and before the lapse of 30 days, the company, in writing, notifies the insured that it elects to take the damaged personalty at the appraised value, and to replace the destroyed and injured personalty with other of like kind and quality, and that it elects to repair the injured building. Is it open to the insured to say that by entering into the appraisement the company had secured the right to take the damaged personalty at the appraised value, but had lost the right to replace the personalty by other articles of like kind and quality? The contention is that by calling for an appraisement the company indicates its intention to elect to make a money payment, instead of replacing or repairing the property, and that by uniting in an appraisement it makes the election, and is bound thereby. Certainly, the terms of the policy do not declare the act of appraisement to be an election between the two modes of performance open to the

company. The policy requires the ascertainment of the amount of the loss, either by agreement or by an appraisement, as part of the completed proofs, and then provides that within 30 days after the receipt of the proofs the company may elect to replace the destroyed property. Is it not clear that the company will ordinarily be better prepared to intelligently exercise the option to perform its contract of indemnity by making a money payment, or by replacing the injured or destroyed property, after the extent of the loss and damage have been ascertained in the mode provided for in the policy, than if it is compelled to make the election before it is permitted to ascertain the extent of the loss which it is called upon to make good? Is there any good reason, founded in public policy or otherwise, that prevents the parties from agreeing that the company shall not be compelled to elect between the two modes of performance until the amount of the loss or damage has been ascertained either by agreement or by appraisement? Unless forbidden by statute or by some well-recognized principle of public policy, it must be true that the company has the right to secure to itself the privilege of performing its contract of indemnity by a money payment, or by replacing or repairing the destroyed or injured property, and to designate in the policy the time within which this lawful right of election may be exercised. In the policy issued by the defendant company it is provided that in case of loss it is optional with the company to discharge its liability either by a money payment or by replacing or repairing the destroyed and injured property, and the mode and time within which the company may exercise its election as to the manner of performance are clearly pointed out. If it elects to replace or repair the property, it must so notify the insured, in writing, within 30 days after the receipt of the proof required to be furnished to the company, and, if such notice is not given, it is held to elect to indemnify the insured by a money payment. It seems clear that this is the fair and reasonable construction of the terms of the policy, which evidences the contract of the parties, and I should not hesitate in so holding were it not for the cases of Elliott v. Insurance Co., 79 N. W. 452, decided by the supreme court of Iowa, and McAllaster v. Insurance Co., 50 N. E. 502, decided by the court of appeals of the state of New York, which are relied upon by plaintiff as sustaining the construction contended for by him. In the Elliott Case, as appears on the face of the opinion, the terms of the policy did not provide that action taken in the way of an appraisement should not be held to be a waiver of any of the conditions of the policy, and in the course of the opinion the court held that the case of Platt v. Insurance Co. (Ill. Sup.) 38 N. E. 580, cited by defendant, was not in point, because in that case the policy provided that arbitration should not affect the rights of either party, and therefore, in the Elliott Case, the supreme court of Iowa did not have under consideration the exact point presented by the terms of the policy now in suit. In the McAllaster Case, however, the court of appeals of New York had before it a policy of the same form as the one in question in this action, and its decision is, therefore, directly in point, and the conclusion therein reached fully sustains the contention of the plaintiff herein,

it being held that "a resort to arbitration by the company is an election to make payment in money." In view of the fact that the construction I should place on the terms of the policy does not accord with the conclusion reached by the New York court of appeals, it is greatly to be desired that the question should be settled by the circuit court of appeals, especially in view of the fact that there are several cases pending between the parties in which this question is involved, and I therefore trust counsel will unite with the court in preparing the record in such shape that the question may be speedily and inexpensively considered before the appellate court.