LANCASHIRE INS. CO. OF MANCHESTER, ENG., v. BARNARD.

TRADERS' INS. CO. OF CHICAGO, ILL., v. SAME.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1901.)

Nos. 1,545, 1,546.

1. INSURANCE—ADJUSTER—AUTHORITY OF.

An adjuster sent out by insurance companies to determine the amount of and settle an alleged loss is authorized to exercise their option to pay the damages or to reconstruct or repair the building injured.

2. SAME—OPTION TO REBUILD—WHEN EXERCISED.

The option to pay the damages for an alleged loss or to rebuild the injured structure secured in policies of insurance may be exercised by the companies at any time after the loss and before the expiration of the time prescribed for its exercise in the policies.

3. SAME—PLANS AND SPECIFICATIONS—REQUEST FOR WHEN TOO LATE.

A request by an insurance company for plans and specifications of a burned building after it has exercised its option not to rebuild, and after the amount of the loss has been fixed by the award of appraisers, is too late, and the failure of the insured to grant it is no defense to an action on the policy.

4. SAME—FACTS AND DECISION.

An insured building was burned November 26, 1896. The preliminary proofs were delivered December 20, 1896. The adjuster of the companies notified the insured on January 5, 1897, that they would not rebuild. The award of the appraisers under the policy fixing the amount of the loss was published June 5, 1897. On June 18, 1897, the companies requested plans and specifications of the burned building. Held, the demand came too late, a compliance with it would have been useless, and the refusal of the insured to grant it constituted no defense to actions upon the policies and the award.

5. CONTRACTS AND REMEDIES GOVERNED BY LAW OF STATE WHERE FORMER ARE MADE AND LATTER ARE ADMINISTERED.

Matters relating to the execution and validity of contracts are governed by the law of the place where they are made; matters relating to remedies by the law of the place where suit is brought. A policy of insurance covering property in Illinois made and delivered in Nebraska, and upon which action is brought in Nebraska, is subject to the law of Nebraska relative to interest upon the amount due thereon.[1]

6. INSURANCE—PAYMENT OF LOSS WHEN DUE.

Where a policy provides that the loss shall be payable 60 days after the delivery of proofs, and does not make the award of appraisers a part of the proofs, the damages are due immediately after the filing of an award subsequent to the expiration of the 60 days.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

Charles J. Greene and Ralph W. Breckenridge, for plaintiffs in error.

Frank H. Gaines (James E. Kelby and John A. Storey, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

---

[1] What law governs insurance policies, see note to Corley v. Association, 46 C. C. A. 287.

SANBORN, Circuit Judge. These are actions against two insurance companies upon an award of appraisers under the provisions of their policies fixing the amount of the loss from the burning of a hotel at Peoria, in the state of Illinois, which was owned by Lura D. Barnard, the plaintiff below, and was insured against fire by eight companies, two of which are the plaintiffs in error here, the Lancashire Insurance Company of Manchester, England, and the Traders' Insurance Company of Chicago, Ill. The defense of the Lancashire Company was that it demanded verified plans and specifications of the hotel injured, under the provisions of its policy, which requires the insured to furnish them if requested, and the plaintiff refused to provide them. The Traders' Company made the same defense, and also alleged that the suit against it was prematurely brought. To the defense that she failed to furnish plans and specifications when requested, the plaintiff replied that this request was not made until after the award of the appraisers, which was dated June 15, 1897; and that long before this award was made the companies had notified her that they would not rebuild or repair the burned building. The trial developed these facts: The fire which injured the building occurred on November 26, 1896. On December 20, 1896, the plaintiff furnished to each of the companies proofs of loss. On January 5, 1897, the adjuster of the companies waited upon the husband and attorney in fact of the plaintiff, and negotiated for a settlement of the loss, which she had claimed in her proofs to be $19,876.65. During this negotiation the adjuster stated to Mr. Barnard that he would not pay the amount claimed by the plaintiff, and Mr. Barnard replied, "Go ahead and rebuild." The adjuster answered: "No; we won't rebuild. Wherever we have rebuilt as companies jointly, it has cost us one-third more than it would you. But, if you will go into this appraisement, as soon as the appraisement is over I will write you a check on the companies' agents, and we will waive the 60-days time, and you can proceed to rebuild at once." Thereafter the parties entered into an agreement for an appraisement pursuant to the terms of the policies, and on June 15, 1897, the appraisers made an award, wherein they found the amount of the loss to be $19,681. On June 18, 1897, the companies requested the plaintiff to furnish plans and specifications of the building in order to enable them to determine whether they would pay the award or rebuild the hotel. The plaintiff refused to comply with this request. In this state of the case the court below instructed the jury that the declaration of the adjuster in January, 1897, that the companies would not rebuild or repair was an election on their part to pay the damages, and not to rebuild; that the plans and specifications at the time they were demanded, after the award had been made, could have been of no benefit to the defendants; and that they must find a verdict against each of them for one-eighth of the amount of the award, with interest on the amounts due from the defendants in these actions at the rate of 7 per cent. per annum from August 16, 1897. This charge of the court and many other rulings are assigned as error, but the conceded facts of the case are such that, if this instruction was right, the other rulings of which complaint is made are immaterial, and the judgment below

must be affirmed. The only real controversy in this court arises over the correctness of this instruction.

It is contended that the declaration of the adjuster in January, 1897, that the companies would not rebuild or repair, did not constitute an exercise of their option to pay the damages or to rebuild, because the adjuster had no authority to make the election, and because the companies had no power to make it until after the award of the appraisers was published. The argument in support of this position is based upon the following provisions of the contracts: The policy of the Lancashire Company provides that where fire occurs the insured shall within 60 days after the fire furnish proofs thereof, "and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged"; that, in the event of a disagreement as to the amount of loss, the same shall be ascertained by appraisal, and that "the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required." It also contains provisions to the effect that it shall be optional with the company to "take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within reasonable time, on giving notice within 30 days after the receipt of the proof herein required of its intention so to do"; that the company "shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for"; and that "no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto," nor unless such waiver is written upon or attached to the policy. The stipulations of the policy of the Traders' Company reserve to it the option to reconstruct the building or to pay the damages, and provide for an appraisal of the amount of the loss in case of disagreement; but they are not quite as favorable to the defendants as the provisions of the Lancashire Company's contract, and for that reason will not be set forth at length.

Upon the provisions of the policy of the Lancashire Company, which have been recited, counsel for the plaintiffs in error base an argument to the effect that the attempted election in January, 1897, by the adjuster, to pay the damages, and not to reconstruct the hotel, was ineffectual, because he had no authority to waive any provision of the policy, or to make the election, and because the company had no right or power to exercise its option until after the award of the appraisers had been published. But an adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained, or to rebuild or repair the building injured. The whole is always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal

contract to fix the amount of and to discharge the liability. An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it shall be paid; and hence he necessarily has the authority to determine whether it shall be paid in money or by the reconstruction of the injured building, and the power to exercise the option of the company in that behalf. Snowden v. Insurance Co., 122 Pa. 502, 510, 16 Atl. 22; Platt v. Insurance Co., 153 Ill. 113, 122, 38 N. E. 580, 26 L. R. A. 353, 46 Am. St. Rep. 877. No provision of the policy forbids the exercise of this power, and hence no stipulation of the agreement is either violated or waived by its use.

But the position upon which counsel seem to place their chief reliance is that the company had no power to exercise its option until after the award of the appraisers had been made. They sharply call attention to the fact that the policy provides that the loss shall not become payable until 60 days after the proof of loss, including the award of the appraisers, has been received by the company; and that it shall be optional with the company to repair or rebuild, upon giving notice of its intention so to do within 30 days after the receipt of the proof of loss; and they insist that it is only within this 30 days that the option to rebuild can be exercised by the corporation. It may be conceded that, in the absence of any prior exercise of the option, the insurance company has until the expiration of 30 days after the publication of the award in which to make its choice. Langan v. Insurance Co. (C. C.) 96 Fed. 710. But it does not follow from this concession that the company had no right to exercise its option prior to the filing of the award. The provision of the policy which allows the company 30 days after the completion of the proofs, including the award of the appraisers, in which to determine whether it will pay the damages or reconstruct the building, is a stipulation for the benefit of the company. It provides an extended period within which its option may be exercised, and it definitely fixes the termination of that period. But it does not prescribe or limit the time of its commencement. It does not prohibit it from making its choice at any time after the fire and before the award. Any other rule would make an appraisal and award a condition precedent to the exercise of this option at all. This is not the true meaning of the stipulation, and was not the intent or purpose of the parties to the agreement. The fire occurred on November 26, 1896. The preliminary proofs of loss, stating the claim of the plaintiff, were delivered on December 20, 1896. They contained no appraisal, but no appraisal was necessary if the parties agreed upon an adjustment. The stipulation of the policy made it optional with the company to pay the damages claimed or to rebuild the hotel. It had the same right to exercise that option at any time after the fire that it had to exercise it within 30 days after the filing of the award of the appraisers. No stipulation of the policy was violated by its exercise in January, 1897. No power of the company was exceeded, and no right of any party to the contract was infringed. An insurance company, which has the right, under its policy, to exercise an option to pay the damages or to reconstruct an injured building by giving

notice of its intention within 30 days after the receipt of proofs of loss, including an award of appraisers, may make its choice at any time after the fire and before the expiration of the 30 days. Wynkoop v. Insurance Co., 91 N. Y. 478, 482, 43 Am. Rep. 686; Association v. Rosenthal, 108 Pa. 474, 1 Atl. 303; Insurance Co. v. Garlington, 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613; Brady v. Insurance Co., 11 Mich. 425; Morrell v. Insurance Co., 33 N. Y. 429, 88 Am. Dec. 396; Beals v. Insurance Co., 36 N. Y. 522; Heilmann v. Insurance Co., 75 N. Y. 9. The declaration of the adjuster for these companies in January, 1897, that they would not rebuild the hotel, was an exercise of the option of the companies to pay the damages, and not to rebuild or repair. The award of the appraisers on June 15, 1897, conclusively fixed the amount of the loss. After that date plans and specifications of the building injured were useless for any purpose connected with the contracts of insurance, and the request to furnish them was unwarranted by the stipulations of the policy and futile. They could not aid the insurance companies to ascertain the amount of the loss which they should pay, because that was fixed by the award. They could not assist them to rebuild the property, because they had made their choice to pay the damages, and had irrevocably abandoned their right to rebuild. The failure of the defendant in error, therefore, to furnish the plans and specifications which were first requested after the company had exercised its option not to rebuild, and after the amount of the damages it had chosen to pay had been fixed, constituted no defense to these actions.

The Traders' Company presents two other questions for our consideration. The plaintiff resided in the city of Omaha, in the state of Nebraska. She procured her insurance through brokers resident in that city, who obtained the policy of the Traders' Company from its agents residing in the state of Illinois. The property insured was situated in the state of Illinois. The premium was paid and the policy was delivered in the state of Nebraska. The rate of interest in the state of Nebraska for default in the payment of moneys due upon contracts of this character is 7 per cent. per annum, while the rate in the state of Illinois is 5 per cent. per annum. The circuit court instructed the jury to allow interest at 7 per cent. upon the defendant's share of the award from a date 60 days after its publication. It is claimed that this was an Illinois contract, and that the defendant should not have been charged more than 5 per cent. interest upon the amount it owed. But the statute of Nebraska provides that "any person or firm in this state who shall receive or receipt for any money, on account of or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall receive or receipt for money from other persons, to be transmitted to any such company or individual aforesaid, for a policy or policies of insurance or any renewal thereof, although such policy or policies of insurance may not be signed by him or them, as agent or agents of such company, or who shall in any wise, directly or indirectly, make or cause to be made any contract or contracts of insurance, for or

on account of such company aforesaid, shall be deemed to all intents and purposes an agent or agents of such company, and shall be subject and liable to all the provisions of this chapter." Comp. St. Neb. 1893, c. 16, § 8. Under this statute the brokers in Omaha were the agents of the company. The policy of the Traders' Company was delivered in the state of Nebraska to a resident of the state of Nebraska, who there paid the first premium. It was therefore a Nebraska contract, to be governed and construed by the laws of that state. Matters relating to the validity and execution of a contract are governed by the law of the place in which it is made; those relating to the remedy by the law of the place in which the suit is brought. This contract was made in Nebraska, and the action upon it was brought in Nebraska. Therefore the rate of interest upon the amount due upon it was governed by the law of that state. Insurance Co. v. Russell, 77 Fed. 94, 100, 23 C. C. A. 43, 48, 40 U. S. App. 530, 543; Society v. Winning, 58 Fed. 541, 7 C. C. A. 359, 19 U. S. App. 173.

Finally, counsel for the Traders' Company contend that the action against it was prematurely brought. It was commenced on July 19, 1897. The award was made on June 15, 1897. The contention is that no action could be maintained under the policy until 60 days after the filing of the award. But a careful examination and analysis of the provisions of the policy of this company fails to disclose any provision which extends the time of payment until 60 days after the publication of the award of the appraisers. The Lancashire policy, as we have seen, expressly provides that the loss shall not become payable until 60 days after the proof of loss, including an award by appraisers when appraisal has been required. The Traders' policy has no such provision. The stipulations of its contract are that it shall pay the damages resulting from the loss 60 days after the written notice and proofs shall have been made by the assured, unless the company shall have given notice of its intention to rebuild, repair, or replace the property damaged or destroyed within that time; that it has the option to repair, rebuild, or replace the property damaged within 60 days after receipt of the proofs, and that the proofs shall be delivered within 30 days after the loss has occurred. The proofs of loss were delivered on December 20, 1896. The policy provided that the insured should produce plans and specifications if requested, and that the loss should be payable within 60 days after the receipt of the proofs, unless the company exercised its option to rebuild within that time. No plans or specifications were called for. No notice of intention to rebuild was given within the 60 days. The necessary effect of these provisions of the policy was that the damages would have become due at the expiration of 60 days from the receipt of the preliminary proofs of loss, to which no objection was made, had it not been for the disagreement relative to the amount of the loss and its appraisal under the policy. The result is that immediately upon the completion of the appraisal the Traders' Company's share of the award became due and payable. The 60 days after the production of the proofs mentioned in its policy had expired long before the award was

made, and as soon as that appraisal was complete, and the liability of the company was fixed, its duty to discharge it became instant. The action against the Traders' Company was not prematurely brought, and the judgments below are affirmed.