GOLDSMITH v. THURINGIA INS. CO. OF ERFURT, GERMANY.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1902.)

No. 1,645.

TRIAL—QUESTION FOR JURY—SUBSTANTIAL EVIDENCE—JUDGMENT OF REASONABLE MEN.

Where there is substantial evidence tending to establish each contention over an issue of fact, and reasonable men, in the exercise of a fair and impartial judgment, may well reach a conclusion sustaining either contention, the issue should be submitted to the jury.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

J. H. McCulloch (R. S. Hall and J. J. O'Connor, on the brief), for plaintiff in error.

H. C. Brome (A. H. Burnett, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The plaintiff, Joseph Goldsmith, had a policy of insurance of the Thuringia Insurance Company, of Erfurt, Germany, for one year from September 10, 1897, on his stock of goods while located and contained in the brick building at No. 1401 Douglas street, in the city of Omaha, and not elsewhere. On the 24th and 25th days of May, 1898, he moved his stock from the building at 1401 Douglas street into the building at 1407 Harney street, in the city of Omaha, and at about 6 o'clock in the afternoon of the latter day it was damaged by fire. He sued the insurance company on the policy, and it defended on the ground that the goods described in the policy had been removed before the fire from the place in which they were insured, so that when it occurred they were not covered by the contract. At the close of the evidence the court instructed the jury to return a verdict for the defendant, and this ruling is the principal error assigned.

The evidence which conditions the correctness of this ruling disclosed these facts: Brennan, Love & Co. were the agents of the insurance company in Omaha. A. J. Love, a member of that firm, was the active manager of their insurance business, and Miss Dunn was their stenographer. Edward E. Howell was the agent of the plaintiff. He procured the policy for him from Brennan, Love & Co. originally. A few days before May 25, 1898, Love saw the goods of the plaintiff moving toward Harney street, and he told Howell that he would not consent to a transfer of this insurance to the goods in their new location. On the morning of May 25th Howell sent to the office of Brennan, Love & Co. the plaintiff's policy, with a removal slip attached, ready for the signature of Brennan, Love & Co., whereby they, as agents of the defendant, consented to the transfer of the policy and the insurance to the plaintiff's stock of merchandise in its new location, and, through his messenger, requested them to sign it. Mr. Love was not in the office. Miss Dunn received and kept the policy and slip. She replied to the request that she would rather refer the matter to Mr. Love before she let it go out of her hands, but that she would sign the permit if Mr. Love approved it. Miss Dunn and Mr. Love testified that the matter was not called to his attention, and that he did not know or approve of the transfer before the fire. During the day, and before the fire, Miss Dunn, however, signed the slip with the name Brennan, Love & Co., as she was authorized and accustomed to do when such transfers were approved by Love. She left the policy, with the removal slip thus signed, upon her desk. The next morning the office boy handed it to a messenger of Mr. Howell before Mr. Love or Miss Dunn had arrived at the office. Love testified that he first learned about this removal slip on the morning of May 26, 1898, the day after the fire. On that morning he went to the plaintiff's store, had an interview with him, said nothing about the expiration or lapse of his policy, and told him he would send an adjuster to investigate the fire. On the same day he wrote and sent to the plaintiff a letter in which he notified him that his policy would be canceled at noon on that day, "subject to a loss which occurred at 6:18 p. m. yesterday."

Would all reasonable men, in the fair exercise of their impartial

judgment, be compelled to conclude from this evidence that the agent Love did not know and approve of the transfer of the insurance before the fire? A careful review of the testimony fails to convince that this question should be answered in the affirmative, and it is only when it can be so answered that an issue of fact may be properly withdrawn from the jury. Mr. Love and Miss Dunn testify that he did not approve the transfer. But the acts and interpretations of parties to contracts before controversies arise are often as cogent and persuasive evidence upon the question of their existence and meaning as their testimony. Miss Dunn told the messenger she would sign the slip if Mr. Love approved it. She did sign it. Mr. Love knew she had signed it the next morning, and he knew the stock had been moved, but he did not question the existence and validity of the policy, or the liability of the company for the loss. On the other hand, he acknowledged the liability, and made the cancellation of the policy expressly subject to the loss. It is true that, if the transfer slip was not approved before the fire, he could not create a liability of the company by acknowledging or admitting it after the fire. But the signature of Miss Dunn to the slip, and Love's interview with the plaintiff, and his cancellation of the policy, subject to the loss, after the fire, are competent and persuasive evidence on the issue whether or not Love was aware of and approved the transfer. They may persuade some reasonable men that he had knowledge of it, and approved it, although the fact had slipped from his memory when he testified. This question should have been submitted to the jury under this evidence, and the judgment below is accordingly reversed, and the case is remanded to the court below for a new trial.