## MEMPHIS CONSOL. GAS & ELECTRIC CO. v. BELL.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1907.)

### No. 1,621.

ELECTRICITY—NEGLIGENCE—ACTION FOR INJURY FROM ELECTRIC LIGHT WIRE—QUESTIONS FOR JURY.

Plaintiff's intestate, who was a lineman in the employ of a telegraph company, while stringing wire on a pole, received a severe electric shock which caused him to fall, resulting in his death. The pole also carried telephone wires, one of which was grounded, and two high current electric wires of defendant. These wires were placed next the pole on each side, about 18 inches apart, and one was spliced near the pole, and at such splice the insulating tape had worn or burned away, leaving the wire exposed, but the absence of insulation was not noticeable without close inspection. The deceased was an experienced lineman, and was familiar with the pole and the wires thereon. No one saw the accident, but there was evidence tending to show that the shoulder of deceased came in contact with the exposed part of the electric light wire while his foot was touching the grounded telephone wire which was some five feet below. *Held* that, in view of the fact that defendant was required to insulate its wires and attempted to do so, the question of its negligence in placing the wires so near together, and in failing to properly inspect the same so as to keep the insulation in a reasonably safe condition, where it was known that linemen were liable to come in contact with them, was for the jury, as also the question of the contributory negligence of the deceased; there being no evidence that he knew the wire was not properly insulated, and did not rely on its being so insulated, as he had reasonable grounds to do.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, §§ 7–11.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

E. E. Wright and Edwin Hedrick, Jr., for plaintiff.
E. G. Bell, for defendant.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit to recover damages for personal injuries resulting in the death of the plaintiff's intestate, D. L. Brooks, a lineman in the employ of the Western Union Telegraph Company at Memphis. This company and the Cumberland Telephone & Telegraph Company were originally joined as codefendants, but during the first trial the suit was dismissed as to them.

The original declaration contained a general charge of negligence against all three companies, and in addition a charge that the present defendant, the Memphis Consolidated Gas & Electric Company, had

negligently failed to properly insulate its wires where it was known the plaintiff's intestate and other linemen of the Western Union Telegraph Company were compelled to work, and that it negligently failed to inspect its wires so as to keep them in a reasonably safe condition. The case was twice tried, and during the second trial the plaintiff was permitted to amend his declaration by alleging that the defendant negligently failed to properly construct its wires upon the pole from which the plaintiff's intestate fell, and placed its high tension wires too close together; "the said negligent construction and maintenance consisting in placing said high tension wires eighteen inches apart." As already indicated, the case has been twice tried, the court setting aside the first verdict, because not satisfied the plaintiff was entitled to recover, and sustaining the second, although still indicating the impression that it should have withdrawn the case from the jury. In other words, the court was unable, after sitting through two trials, to satisfy itself upon the point whether the case was or was not one for the jury. The court indicates, however, in its final word that it is disposed to think that in this circuit perhaps a more stringent rule than obtains elsewhere has been established with respect to companies using dangerous currents of electricity upon wires strung in the streets.

It is now contended that the court should have directed a verdict for the defendant on the ground that the testimony not only failed to sustain the charge of negligence, but made out a clear case of contributory negligence. On August 3, 1905, D. L. Brooks was employed by the Western Union Telegraph Company. He was an experienced lineman, having been so engaged for several years, and was familiar with the pole on the corner of Main and Calhoun streets, in Memphis, on which were strung not only the telegraph wires of the Western Union Telegraph Company, but also the telephone wires of the Cumberland Telephone & Telegraph Company, and, on the lower crossarm, the electric light wires of the defendant, the Memphis Consolidated Gas & Electric Company. The pole stood between two inside parallel electric light wires of the electric company, located about 18 inches apart. About four feet below the crossarm which carried the electric light wires was a messenger wire of the Cumberland Telephone & Telegraph Company, which was "grounded," and this fact was known to Brooks. The inside electric light wire west of the pole was fastened together by a splice at a point about 18 inches north of and perpendicular to the crossarm. The distance from this joint in the electric light wire to the nearest point of the messenger wire leading out from the pole on its west was about five feet. On the day mentioned Brooks was ordered to string some wires for the Western Union Telegraph Company on this pole. While engaged in this work, he received a severe shock of electricity and fell from the pole to the pavement, receiving injuries from which he died within a few hours. No witness saw him fall. An examination of his person showed that he had been burned in two places, on the left foot and right shoulder. These are the points of his body which would naturally have come in contact—the first with the grounded messenger wire, and the second with the electric light wire at the point where it was spliced. An

examination of this splice disclosed the fact that the tape had become worn and weather-beaten and, at the point where Brooks' shoulder touched it, there was no insulation. The current of electricity had burned away the tape which remained, so the wire at this point was bare. There was testimony which showed that Brooks had been warned about these electric light wires and all similar wires; that they were dangerous, and, whether insulated or not, they should be treated as live wires. These were high tension wires, carrying a voltage of from 2,000 to 2,300 volts, an electric current dangerous to life.

The negligence charged against the defendant was in placing these high tension wires too close together on the pole, and in not properly insulating the same, and in failing to inspect them so as to keep them in a reasonably safe condition. According to the testimony, the high tension wire which was spliced and not properly insulated, and from which Brooks received the shock which resulted in his death, was not located more than 18 inches from the next high tension wire on that crossarm, and the pole was between. We think that the question was properly left to the jury as to whether the company was not negligent in placing these wires in such dangerous proximity. The testimony further showed that the high tension wire in question was not properly insulated at the splice or joint. But it is said that the lack of insulation at this point could not have affected injuriously the plaintiff's intestate, because it is impossible to effectively insulate a high tension wire of this character, and the deceased was instructed to treat all such wires as live wires, just as if no attempt had been made to insulate them. But, in view of the fact that such wires are required to be insulated, and that an attempt in this case was made to insulate the particular wire, and to all appearance it was insulated, and especially since it conclusively appears from the burns received by the plaintiff's intestate that the deadly current did actually pass through the joint or splice where the insulation had worn off, we think the court properly left it to the jury to say whether the defendant was not wanting in proper and ordinary care in placing these high tension wires so close together, and in permitting one of them to become uninsulated at the very point where the lineman was liable to brush against it in ascending the pole.

We next come to the question whether the court was justified in leaving the matter of contributory negligence to the jury. There was some testimony tending to show that the lineman, Brooks, on ascending the pole, could have observed, if he had kept his eyes open, that the electric light wire was exposed at the joint or splice and therefore was not properly insulated, but we think it was a question for the jury, since the testimony upon this point was conflicting, as to whether the lack of insulation could be observed by the lineman while ascending the pole. It is certain that after the accident a special examination had to be made in order to discover the extent to which the insulation was worn off, and to thoroughly satisfy himself on that point, the city electrician placed his finger upon the wire where the insulating tape appeared to be weather worn, and thus allowed himself to be slightly shocked and burned. In taking this view, of course, we re-

iterate the position ·taken with respect to the question whether the negligence of the defendant was properly left to the jury, that whether the high tension wire was insulated or not must not be regarded as unimportant, as if the company were under no obligation to keep such wires insulated, and linemen had no right to act upon the supposition that they were insulated. While it may be difficult to insulate high tension wires, and to keep them insulated under all circumstances, we think in cases like the present, where such wires are strung on the poles along with low tension wires, requiring frequent attention and repairs by the linemen of telegraph and telephone companies, the tendency of the courts is to hold that ordinary care and prudence requires their insulation to be maintained by reasonable inspection and repair, and by the usual methods adopted for such purposes. Memphis Con. Gas & Elec. Co. v. Letson, 135 Fed. 969, 68 C. C. A. 453.

The strongest point urged against a recovery in this case is that it appears from the burns found upon the body of the plaintiff's intestate that he was in contact with the grounded messenger wire at the time he touched the uninsulated electric light wire, and thus received the current which caused his fall. No one saw lineman Brooks climb the pole and no one saw him when he fell, and his location when he received the current is a matter of inference. The burn through his shirt and on his shoulder indicates that that portion of his body was in contact with the electric light wire where the insulation had worn off near the joint or splice, while the burn on his foot, although on the upper and not the lower part, indicates, so the witnesses say, that the foot was on the grounded wire, but that the current of electricity in passing out of the foot went through the upper part of the shoe, instead of the lower, because there was less obstruction there, the sole of the shoe acting as a resistant to the current. We must concede, however, that if Brooks put himself in contact with the grounded wire, and then touched the uninsulated electric wire, knowing it to be uninsulated, he was guilty of contributory negligence, for he knowingly and unnecessarily put himself in a position of great peril. Williams v. Choctaw, etc., Ry. (C. C. A.) 149 Fed. 104. And this is true if he knew that by touching the electric light wire, whether insulated or not, while standing upon or in contact with the grounded wire, he would expose himself to a dangerous current of electricity. In either event, if the proof upon these questions was conclusive, the court should have directed a verdict for the defendant upon the ground of contributory negligence. The question narrows itself to this: Whether, although the electric light wire was apparently insulated, the deceased, while in contact with the grounded wire, was as a matter of law guilty of negligence in permitting himself to come in contact with it. In other words, ought the jury to have been permitted to pass upon the question whether the deceased was negligent in permitting himself to come in contact with the electric light wire under the circumstances? While the question involved is a close one, and the court naturally remained in doubt as to the correctness of its conclusion until the end, we think the decision was a correct one. The matter was properly left with the jury. It is not to be assumed that Brooks intended to

commit suicide. The natural inference is that he relied, and had reasonable grounds to rely, on the insulation of the electric light wire when he attempted to pass by it while in contact with the grounded messenger wire. Whether he did so rely, and whether he had good reason to, and whether under the circumstances he was or was not guilty of negligence, were, in our opinion, questions which the court, under pertinent instructions, properly left for the jury to decide.

Judgment affirmed.