## UNION LIGHT, HEAT & POWER CO. v. ARNTSON.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1907.)

No. 2,557.

1. ELECTRICITY—NEGLIGENCE—DANGEROUS ELECTRIC CURRENT—DUTY OF LIGHT COMPANY TO USE CARE.

An · electric light company which furnishes electricity for lighting a dwelling owes a duty to exercise a proper degree of care to prevent a dangerous current from entering the house, not only to the owner, but to his family, servants, employés, and all other persons who may rightfully be upon the premises; and for an injury received by any such person as a result of a dangerous current with which the wires in the house are charged through its negligence the company is directly responsible, although the owner of the house may also own the wires therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, §§ 7, 9.]

2. SAME—ACTION FOR DEATH OF PERSON KILLED BY SHOCK—CONTRIBUTORY NEGLIGENCE.

Defendant was supplying a residence with electric lights, and plaintiff's intestate was killed by an electric shock when turning on one of such lights in the basement. It appeared that the transformer used to reduce the current before it entered the building had become out of order, allowing a dangerous current to pass over the wires inside, and that, although defendant had been notified of the fact some hours before, it had done nothing to remove the danger. Deceased and another had been at work in the basement installing a furnace, and deceased, having finished his part of the work the night before, had returned to gather up, and take away his tools. He was told by the other man who was still at work that an employé of the owner had received a shock when turning on a light, that the company had been notified, and had sent an expert who had left some two or three hours before. There was evidence tending to show that deceased attempted to turn on the light in order to see better in finding his tools. *Held*, that the question of his contributory negligence was properly left to the jury, and that their verdict in favor of plaintiff would not be disturbed; it not appearing but that deceased might well have supposed that the trouble with the lights was trifling, and had been fully remedied by defendant's expert.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, § 11.]

In Error to the Circuit Court of the United States for the District of North Dakota.

A. W. Cupler (Ed. Pierce and B. G. Tenneson, on the brief), for plaintiff in error.

Seth W. Richardson (William H. Barnett and B. D. Townsend, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge.   Sarah Arntson, widow of Gunder Arntson, sued the Union Light, Heat & Power Company to recover damages occasioned by the death of her husband.   She recovered judgment below, and the power company brings the case here by writ of error.

Defendant was engaged in the business of manufacturing and supplying the citizens of Fargo, N. D., with electric current for light and power purposes.   One Stone was a customer of the company.   His residence was equipped with the requisite fixtures, and the company was supplying it and particularly the basement with electric light. Prior to September 2, 1905, the date of the casualty in question, Arntson, with one Davenport, had been employed by Stone to install a new furnace in his basement.   The work had been nearly completed the night before, so that Arntson's services were no longer required there, and he left without taking his working tools away. At about noon of the next day he was directed by his general employer to go and get his tools for use elsewhere.   In obedience to that direction, he went into the basement, and while there gathering them up received a shock of electricity which resulted in his death.   The evidence shows that the shock was occasioned by an excessive current of electricity which had been negligently allowed by defendant to flow into the basement.   The transformer which reduced the primary current of large voltage to one suitable for lighting purposes was out of order, and permitted the deadly primary current to flow over the latter.   Defendant was notified of the trouble.   It was its duty to act promptly, and immediately cut off the current until the defect could be cured and danger averted.   This is not denied by defendant. Negligence is practically conceded, but defendant challenges plaintiff's judgment on the grounds (1) that in the circumstances disclosed by the proof it owed no duty to Arntson, and therefore could not be guilty of any breach of duty; (2) that notwithstanding defendant's negligence in permitting the current of deadly voltage to enter the basement Stone's possession of the fixtures in the basement and his duty in relation to them interposed an efficient and proximate human agency between defendant's negligence and Arntson's injury and caused the latter; (3) that Arntson was guilty of contributory negligence which precludes recovery.   We think all these contentions are untenable.

1. Defendant owed a duty to its patron Stone to exercise a proper degree of care to prevent a dangerous current of electricity from entering his dwelling.   This duty on the plainest principles of law and common sense extended to his family, his servants, his employés, and others who might rightfully be upon his premises.   The current was a subtile and dangerous agent, and when uncontrolled was such as might be fatal to any occupant of a building in which it might be

installed. This the defendant must have known, and it must have known what everybody else knows, that servants, artisans, and workmen of one kind or another are liable at any time to be within the building in the customary and proper discharge of duty. The evidence conclusively shows that Arntson was such a workman. He had been employed in performing a usual and customary duty for Stone, renewing his heating apparatus and making the house ready for the approaching winter. Having finished his part of the work, he returned to gather up his tools for use elsewhere. He was required to go into the basement where he had used them and left them. That the defendant should have fairly and reasonably anticipated that the basement which it had equipped with wires and lamps for lighting purposes would be occupied and used as it was and that Stone's agents, servants, and employés might from time to time be there is not debatable, and that defendant owed a duty to exercise a proper degree of care for their safety, is beyond question. If authority were necessary to sustain so plain a proposition, reference might be made to 1 Thompson on Negligence, § 801 et seq., and to the cases there cited.

2. Stone's ownership and control of the building presented no such intervening human agency between defendant's negligence and the injury of Arntson as precludes recovery in this case. No view of the facts warrants the conclusion that he had any relation to the injury whatsoever. It was out of his power to prevent it. It was the current of electricity generated by defendant's dynamo, and under its exclusive control and operation, and not the dead and harmless wire and lamps in Stone's possession, disconnected from the live current, that caused the injury. Defendant's obligation to Stone's family, servants, and workmen was a primary and continuing one. Neither Stone nor any of them could guard themselves against a failure to perform that obligation. They necessarily had to take and use the current trusting to the efficiency, care and watchfulness of defendant company. For interesting and instructive cases on this subject, reference may be made to Memphis Consol. Gas & Electric Co. v. Letson, 135 Fed. 969, 68 C. C. A. 453, and cases there cited.

3. Did Arntson by his own negligence contribute to the fatal injury which he received; or to put it more aptly, for the purposes of this case, is the evidence so conclusive that his negligence did contribute to his death that the jury could not lawfully have found to the contrary? The burden of proving contributory negligence rested on the defendant, and, in order to justify a directed verdict in its favor on that issue, the facts must have been such that all reasonable men in the exercise of an honest and impartial judgment would have found such negligence. Such is the well-settled rule of law. What are the facts? During the forenoon of the fatal day before Arntson returned to the basement for his tools one Worth, an employé of Stone, went into the basement where Davenport was finishing the installation of the furnace, and while attempting to turn on one of the electric lights which was there received two successive shocks of considerable severity. Defendant company was at once notified of that fact, and sent an expert representative to give it attention. He made the investigation, and reported back to the company. Some two or three hours

after Worth's experience Arntson appeared to get his tools, and was fully informed by Davenport about the events of the morning. In connection with the narration, he was told that the expert had been there some two or three hours before, and had gone away. There are facts involving some detail unnecessary to relate from which the workmen might reasonably have believed that the trouble which Worth experienced arose from some temporary defect in the insulation of one of the extension wires connected with one of the lights in the basement. There was evidence tending to show that, while Davenport was narrating Worth's experience in the morning, Arntson was looking about for his tools. He undertook to turn on one of the lights, and, while doing so remarked, "I always take hold of a light that way," and instantly received the fatal shock. Defendant contends that it appears from this kind of evidence that the deceased knew from Davenport's narration of Worth's experience that something was out of order, and that the lamps or wires could not be touched with impunity, and that Arntson was experimenting or boasting of his ability to do with impunity what Worth failed to do when he received the shock, and that by so doing he voluntarily subjected himself to known danger, and is not entitled to recover. Plaintiff, on the other hand, contends that a fair inference from the evidence is that Arntson had reason to believe and believed from the fact that defendant's expert had been there and gone away and from other facts in the case that the trouble of the morning was only temporary and trifling, and had been effectually cured by the company's expert, and that he undertook to turn on the light, not as an exhibition of recklessness, but in order to aid him to discover the location of his tools and enable him to gather them up. In our opinion the evidence referred to and all other evidence bearing legitimately on the issue before us presented a fairly debatable question of fact, one about which reasonable men might honestly and fairly differ, and one which might reasonably and plausibly be found either way. Whether or not the deceased was guilty of contributory negligence depended largely upon circumstantial evidence. Because of the average man's familiarity with facts of every-day life and with the reasons and motives which actuate human conduct the issue in question was peculiarly one for the jury. They could best determine the significance of the facts and the reasonable inferences to be drawn from them.

It appears from the record that the chief question of fact below was whether Arntson was attempting to turn on the light to aid him in finding his tools or to experiment with a view of ascertaining whether the light could be turned on without a shock. The court below submitted that question to the jury in the form of the following question:

"Was Mr. Arntson at the time of the accident attempting to turn on the light to aid him in finding his tools, or was he attempting an experiment to ascertain whether he could turn on the light without receiving a shock?"

The jury answered it as follows:

"We, the jury, find that Mr. Arntson was attempting to turn on the light to aid him in finding his tools."

And at the same time they rendered a general verdict in favor of plaintiff. There was no disharmony between the special finding and the verdict.

The charge to the jury is not preserved in the record. The fair inference from this fact is that defendant could find no fault with it. We therefore have a case in which the jury was properly instructed on the law, gave special consideration, and made a special finding on a debatable and controlling question of fact, and rendered a general verdict in harmony therewith. We discover no reason for interfering with their conclusion.

The judgment is affirmed.