## FINCH v. CITY OF OTTAWA.

### (Circuit Court of Appeals, Eighth Circuit. September 1, 1911.)

### No. 3,523.

1. MUNICIPAL CORPORATIONS (§ 766*)—TORTS—STREETS—CONTROLLING ELEC-
TRICITY.

Where a city conveyed a deadly current of electricity for lighting
and power purposes along a public alley, and permitted a telephone com-
pany to maintain its poles and wires on the same alley and close to the
light wires and directly above them, the city would be held to have
known and anticipated that the telephone wires might break and fall
on or near to the light wires, that the telephone company employés would
be required to examine and inspect its wires to keep them in proper
condition, and that others would be on its public streets, and hence it
was the city's continuing duty through its proper officers to exercise
reasonable care commensurate with the dangers incident to the trans-
mitting of such current to prevent injuries to third persons rightfully
on the street or alley by the escape of electricity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
§§ 1621, 1622; Dec. Dig. § 766.*]

2. MUNICIPAL CORPORATIONS (§ 817*)—ELECTRICITY—PERSONAL INJURIES—
BURDEN OF PROOF.

Where plaintiff, a telephone lineman, was injured by an electric cur-
rent escaping from the city's electric light wires through a telephone
wire into his body, the burden was on him in order to recover from
the city to show that he received the injury by means of a current of
electricity, and that the current escaped from the control of defendant
city by reason of its neglect.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
817.*]

3. MUNICIPAL CORPORATIONS (§ 821*) — ESCAPE — INJURIES — NEGLIGENCE —
QUESTION FOR JURY.

In an action for injuries to a telephone lineman by the alleged escape
of electricity from an electric light wire belonging to defendant city,
evidence *held* to require submission to the jury of the question whether
the current by which plaintiff was injured was negligently permitted to
escape from the city's wire.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig.
§ 821.*]

In Error to the Circuit Court of the United States for the District
of Kansas.

Action by Clyde G. Finch against the City of Ottawa. Judgment
for defendant, and plaintiff brings error. Reversed.

E. H. Gamble (Guthrie, Gamble & Street, and W. J. Costigan, on
the brief), for plaintiff in error.

F. A. Waddle and A. L. Berger, for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and REED, District
Judge.

REED, District Judge. The plaintiff in error sued the city of Ot-
tawa, a municipal corporation of Kansas, to recover damages for a
personal injury to himself which he says was caused by the negligence
of the city in permitting a current of electricity, which it had generated

and was using to operate a municipal light and power plant in the city, to escape from its control, and come in contact with a broken telephone wire stretched along a public alley of the city, which plaintiff was repairing, and charge said wire with a current of electricity which shocked and seriously burned the plaintiff, causing the injuries of which he complains. The defendant denied any negligence upon its part, and alleged contributory negligence on the part of plaintiff. At the close of all the testimony, the Circuit Court directed a verdict for the defendant upon which a judgment was rendered against plaintiff, and he prosecutes this writ of error.

The facts as shown by the testimony are substantially as follows: The plaintiff in June, 1907, was employed as a lineman by a telephone company operating a telephone system in the defendant city by its permission. The defendant at such time owned and was operating in the city an electric light and power plant. Upon the east side of a public alley running north and south from Fourth street to Fifth street a telephone pole was set near each of said streets and about 132 feet apart, upon which four telephone wires were strung through the alley from pole to pole some 25 feet or so above the surface of the ground. Upon the same side of this alley and within three or four feet of each telephone pole and in line therewith, an electric light pole was set upon which two electric light wires were strung through the alley from pole to pole; said wires being approximately three feet apart. The telephone poles were some feet higher than the light poles, and the telephone wires four to seven feet higher than the light wires and directly above them, or nearly so. About 36 feet north of the light pole at Fifth street and near the east line of the alley is a tree some 34 feet high, the branches of which start 8 to 10 feet from the ground and extend some distance into the alley and had grown around the light wires, both of which passed through its branches, as did the telephone wires some feet above them. Thirty feet south of Fourth street and east of the alley is a barn, the west end or gable of which comes within three feet of the east line of the alley, and from which the easterly light wire is kept by a bracket placed upon the ridge of the roof, and to which the light wire was fastened; the westerly light wire being some two feet to the west of the barn gable. During the night of June 22d a storm broke one of the telephone wires at or near the telephone pole at Fifth street, the broken end falling to the ground, whether between or outside of the two electric light wires does not clearly appear, the other end remaining attached to the telephone pole at Fourth street. The next morning the plaintiff was directed by the superintendent of the telephone company to repair this broken wire. He went to the Fourth street end of the alley, there discovered the broken wire, and followed it to a point about midway between the barn and the tree, where he picked it up with his bare hands, and started south with it towards the pole at Fifth street. He felt no shock in so seizing and handling the wire. When he reached the tree, he swung the wire from under its branches to the west, around them and up among them, and then continued south, pulling, as he says, the "slack out of the wire," and, when near the telephone pole at Fifth street

while still pulling the wire towards that pole, he received a severe electric shock which knocked him down, rendered him unconscious, burned him severely on the hands, and other portions of the body, causing the injuries of which he complains. The light and power plant had not been operated during the daytime prior to June 12th, since the previous season. On that day the city began operating it in the daytime, and notified the telephone company accordingly, but the plaintiff had not been informed thereof at the time of the injury, and did not then know that the plant was being operated during the daytime. He had been working for the telephone company at Ottawa since September, 1906, and had some five years' experience as a telephone lineman before that; but had never worked around or where there was an electric light or power plant. The telephone wires carried a voltage of only 22 to 24 volts, were not insulated, and could be handled without gloves or other covering of the hands with perfect safety. Two or three months before the plaintiff was injured the owner of the barn spoken of observed that the insulation of the light wires near the barn was worn off, or at least from the easterly wire. The other he did not particularly notice. He notified the city that the insulation of its line was bad, and requested it to remove it away from his barn, as it endangered it. The city then placed the bracket spoken of upon the gable of the barn to which it fastened the easterly wire as before stated; the other or westerly wire not being within two feet or so of the barn. The insulation was not repaired. The plaintiff in endeavoring to repair the telephone wire observed, as he says, that the covering of the insulation of the light wires had a ragged or broken appearance, but he supposed the insulation was sound. The light plant had been in use 12 or 15 years, and its wires carried a voltage of 1,100 volts, which is sufficient to cause the injuries sustained by the plaintiff. There was no other source from which this telephone wire could have been charged with electricity than from one or both of these light wires. The petition did not allege, and the proofs do not show, from which of the light wires, if either, the telephone wire was charged; but it conclusively appears that it was while the plaintiff was pulling the telephone wire through the branches of the tree that it received the charge which caused the injuries to the plaintiff. During the trial the plaintiff endeavored to show that the insulation of both light wires was defective, but he was limited by the court to showing the condition of the insulation upon the west wire only.

The ground for granting the motion for a directed verdict is that the testimony fails to show any cause of action against the defendant.

[1] The defendant was conveying along a public alley of the city a deadly current of electricity for lighting and power purposes. It had permitted the telephone company to maintain its poles and wires upon the same public alley and in close proximity to the electric light wires and directly above them, and it must be held to have known, and to have anticipated, that the telephone wires might break and fall upon or near to its light wires, that employés of the telephone company would be required to examine and inspect its wires to keep them in a proper condition of repair, and that others would be upon its public

streets; and it was its duty through its proper officers to exercise reasonable care, commensurate with the dangers incident to the ·transmitting or conveying of such current, to prevent injury to third parties rightly upon the street by the escape thereof from its control. This duty is a continuing one so long as it conveys such current along the alley; and the safety of the public permits of no intermission in its performance. Mather v. Rillston, 156 U. S. 391, 398, 399, 15 Sup. Ct. 464, 39 L. Ed. 464; Union Light, Heat & Power Co. v. Arntson, 157 Fed. 540–541, 87 C. C. A. 1; Newark Electric Light & Power Co. v. Garden, 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 725; Memphis Gas & Electric Light Co. v. Letson, 135 Fed. 969–972, 68 C. C. A. 453; Colusa Parrot Mining Co. v. Monahan, 162 Fed. 276–280, 89 C. C. A. 256; Southwestern Telegraph & Telephone Co. v. Robinson, 50 Fed. 810–813, 1 C. C. A. 684, 16 L. R. A. 545; Memphis Gas & Electric Light Co. v. Bell, 152 Fed. 677, 678, 680, 82 C. C. A. 25; Glouchester Electric Co. v. Dover, 153 Fed. 139–141, 82 C. C. A. 291; Metropolitan Street Ry. Co. v. Gilbert, 70 Kan. 261, 78 Pac. 807; Gilbert v. Duluth General Electric Co., 93 Minn. 99, 100 N. W. 653, 106 Am. St. Rep. 430; Griffin v. United Electric Light Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477; Walter v. Baltimore Electric Co., 109 Md. 513, 71 Atl. 953, 22 L. R. A. (N. S.) 1178; Keasby on Electric Wires, § 245; Von Trebra v. Gaslight Co., 209 Mo. 648, 108 S. W. 559; Connell v. Electric R. & P. Co., 131 Iowa, 622, 109 N. W. 177; Martin v. Des Moines Edison Light Co., 131 Iowa, 724–740, 106 N. W. 359; Anderson v. Jersey City Electric Light Co., 63 N. J. Law, 387, 43 Atl. 654.

In sustaining the motion for a directed verdict the trial judge said:

"Now, I think the evidence is in such shape it would not be necessary to inquire whether the plaintiff used due care or not, because it will only be from speculating, from mere conjecture, that this jury would arrive at any conclusion as to how this charge (of electricity) was communicated. It evidently must have been something that was done at the time that he commenced pulling on the wire. It is not impossible, at all, that the current may have been received by this wire from some source the defendant company had no connection with. It is not proven, of course, that it did not, but the plaintiff in this case must prove that the city did it, and did it in a negligent manner. Indeed, it is not shown here what it would take—how much it would take—as they insulated these wires—how much force to tear off the wrapping, so you could know. The jury cannot determine this matter, the jury know nothing about it, more than the court. In short, the manner of the production of this contact which brought this charge of electricity to the plaintiff is not shown, except as you would get it by conjecture. It is not shown at all impossible that it may not have come from the telephone company's operating plant itself. The evidence here does show that they did not carry that voltage, but it does not show that it might not receive that voltage even from some other source. In other words, I think your evidence is so that this jury cannot determine more than the court what it was brought this current of electricity to this plaintiff. If your testimony had shown this essential fact, I could not admit the premises of the other side at all, if your testimony had shown that at the place where you received the current of electricity from—that you received it from the electric light wire, and that it was not insulated at this point when this plaintiff commenced with his wire, there, I would send this matter to the jury with proper instructions, but you do not show where it did come from. * * * And I say here, gentlemen, as the proof stands, there is no possible

theory that I can send it to the jury, because I would merely allow them to speculate where this current came from. I would guess, and they would guess, perhaps, it came from one or the other of those wires about this tree where he was working, but they would still have to guess further that the insulation was off before he commenced working, and that plaintiff had no notice or knowledge of such defective condition, before he could recover. You do not show where this wire extended. The current might have come from a thousand places, because it was not there when he commenced—was not there when he threw it up on the tree, and not until he commenced pulling—where it might have been turned onto the telephone wire cannot be told from the evidence. * * * You never can establish anything by circumstantial evidence, unless you exclude every other reasonable hypothesis."

But we are of opinion that there was substantial evidence from which the jury could well have found that the current came from these electric light wires of the city, and could not have come from any other source.

It is true that in United States Fidelity & Guaranty Co. v. Des Moines Nat. Bank, 145 Fed. 273-279, 74 C. C. A. 553, Mr. Justice Van Devanter, then Circuit Judge, speaking for this court, said, quoting from Asbach v. Chicago, etc., Ry. Co., 74 Iowa, 248, 37 N. W. 182:

"A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory for that may be true, and yet they may have no tendency to prove the theory."

In that case the question for determination was whether certain money taken from the chest of the bank and lost to it was lost because of the "personal dishonestly or culpable neglect" of a bonded employé of the bank, within the meaning of the undertaking of a surety company which had guaranteed his fidelity, or was taken by others, who had equal access to the chest where the money was kept that the bonded employé had, and over whom he had no supervision or control; the only evidence being that the money had disappeared from the chest in some manner not shown. Clearly the disappearance alone of the money would be equally as consistent with its theft, or removal from the chest by some other employé who had access thereto, as that it was lost through the "personal dishonesty or culpable neglect" of the bonded employé. As the burden was upon the bank to show that it was lost through such conduct of the bonded teller, the fact alone that the money was missing was not sufficient to warrant a finding that such was the fact.

It is not easy to formulate a general rule that will determine in advance the effect of, or the weight that shall be given to, the infinite variety of circumstances that may be offered to establish a principal fact under judicial investigation; and plainly it was not intended to do so in that case, or in the case from which the quotation is made. Each case must rest upon its own facts, and under the facts there shown it is entirely plain that the circumstances were insufficient to warrant a finding that the pecuniary loss of the bank resulted from the "personal dishonesty or culpable neglect" of the bonded teller. When

different inferences or conclusions may fairly and reasonably be drawn by impartial minds from the proven facts, it is the province of the jury, under proper instructions from the court, to draw them; and only when the facts are such that but one conclusion or inference can reasonable be drawn therefrom may the court declare that conclusion. Northwestern Fuel Co. v. Danielson, 57 Fed. 915–920, 6 C. C. A. 636; Goldsmith v. Thuringia Ins. Co., 114 Fed. 914–916, 52 C. C. A. 534; and this is all that is held in United States Fidelity & Guaranty Co. v. Des Moines Nat. Bank, above.

[2] In the present case it was incumbent upon the plaintiff to prove (1) that he received the injury of which he complains by means of a current of electricity; and (2) that such current escaped from the control of the defendant city by reason of its neglect. That the first of these essentials was shown is not disputed.

[3] But the trial court held as matter of law that the proven facts were insufficient to warrant a finding that the current came from the electric light wires of the city; that from the established facts the conclusion was just as reasonable that the current came from the telephone plant itself, or from a "thousand other sources," as that it came from these light wires. To this we are unable to assent. That the current did not come from the telephone plant is shown by the fact that, when the plaintiff first picked up the broken wire and cast it into the branches of the tree, it was not then a "live wire," or one sufficiently charged with electricity that he felt it; and not until he pulled the slack out of the wire when it was among the branches of the tree and in close proximity to the light wires did it become a "live wire." A fair and reasonable inference therefore is that the telephone wire received its charge of electricity from the defendant's light wires at a place where the insulation had in some manner been worn from them; and a jury might well find that no other conclusion could fairly or reasonably be drawn from the facts proven.

Whether or not the defendant exercised the requisite care to keep its electric light wires properly insulated to prevent the escape of the electricity from them, and the plaintiff exercised such care in handling the broken telephone wire, under the circumstances shown, are questions for the determination of the jury under proper instructions from the court. Of the testimony in relation to them we express no opinion, other than that it should have been submitted to the jury for determination. The trial court, therefore, erred in directing a verdict for the defendant.

Its judgment is reversed, and the cause remanded to that court, with directions to grant a new trial.